# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **TOSIN ADETORO,** *et al.*, <br><br>   Plaintiffs, <br><br> v. <br><br> **KING ABDULLAH ACADEMY,** *et al.*, <br><br>   Defendants. | Case No. 1:19-cv-01918 (TNM) |

## MEMORANDUM AND ORDER

Plaintiffs are eight former employees of a K-12 school, King Abdullah Academy, in Herndon, Virginia, who have sued the school and the Embassy of the Kingdom of Saudi Arabia (collectively, the "Defendants") for employment discrimination on the basis of race, religion or national origin under the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Before the Court now is the Embassy's Motion to Quash for Insufficient Service of Process. For the reasons below, the Court will grant the motion and allow the former employees another attempt to effect proper service.

## I.

The eight former employees filed this suit against the Defendants in the Superior Court for the District of Columbia in December 2018. *See* Compl., ECF No. 1-1 at 2-9.[1] Despite "significant time and resources dedicated to ensuring compliance with the proper procedures required to correctly serve process" on the Embassy of the Kingdom of Saudi Arabia, the former

---

[1] All citations are to the page numbers generated by this Court's CM/ECF system.

employees experienced some difficulty "navigating service of process on an entity that is an extension of a sovereign nation." Pl.'s Mot. for Extension of Time ¶ 5, ECF No. 1-1 at 15-16. In February 2019, the Plaintiffs sought and obtained from the Superior Court an extension of time to serve process. Order Granting Mot., ECF No. 1-1 at 21-22. Using DHL's certified mail services, the Plaintiffs ultimately succeeded in delivering copies of the Summons, Complaint, and Notice of Suit to the Head of the Foreign Ministry for the Kingdom of Saudi Arabia in Riyadh in April. *See* Proof of Delivery, ECF No. 1-1 at 31.

The Embassy removed this action here under 28 U.S.C. §§ 1330, 1441 and 1446, because the Embassy is a foreign state and subject to the District Court's original jurisdiction under 28 U.S.C. § 1330(a). Def. Notice of Removal, ECF No. 1.

The Embassy also moved under Fed. R. Civ. P. 12(b)(5) to quash the Complaint for failure to meet the service requirements of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602, *et seq*. Def. Mot. to Quash ("Def. Mot."), ECF No. 5.

## II.

Section 1608(a) of the FSIA governs service of process "on a foreign state or political subdivision of a foreign state." 28 U.S.C. § 1608(a); Fed. R. Civ. P. 4(j)(1). The Act provides a list of four methods for effecting service, to be followed in seriatim. 28 U.S.C. § 1608(a); *Rep. of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019). The first is "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." 28 U.S.C. § 1608(a)(1). The second, "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2). Third, relevant here:

> by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail

requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned. . . .

*Id.* § 1608(a)(3). And fourth, if the first three methods fail, through the Department of State's diplomatic channels. *Id.* § 1608(a)(4). Both parties agree that neither § 1608(a)(1) nor (2) were available, and thus the requirements of § 1608(a)(3) control.

Service of process on a foreign state must strictly comply with the statutory requirements of § 1608(a). *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994). And while the former employees are responsible for such service, the FSIA "confers upon the district court responsibilities with regard to the sensitive task of service of process on a foreign government." *Barot v. Embassy of the Rep. of Zambia*, 785 F.3d 26 (D.C. Cir. 2015). Specifically, the *clerk of the court* must be the one to "address[] and dispatch[]" the documents "to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3) (emphasis added); s*ee Abur v. Rep. of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006) (finding requirements § 1608(a)(3) satisfied when the clerk dispatched the documents using DHL); *de Sousa v. Embassy of Rep. of Angola*, 229 F. Supp. 3d 23, 28 (D.D.C. 2017) (requirement satisfied when the clerk of the court sent the documents by FedEx).

Additionally, because of the sensitive nature of directly serving a foreign state, courts require strict compliance "even when the equities of a particular case may seem to point in [favor of the plaintiff]." *Harrison*, 139 S. Ct. at 1062.

### III.

The former employees argue that they gave the Embassy notice of the lawsuit by "substantially complying" with the statutory requirements. Pl.'s Opp'n. to Def.'s Mot. to Quash ("Pl.'s Opp'n") ¶ 10, ECF No. 14. And, indeed, they have produced a receipt showing delivery to the Head of the Foreign Ministry for the Kingdom of Saudi Arabia in Riyadh. *See* Proof of

3

Delivery. The courts have made clear, however, that substantial compliance is insufficient in the sensitive areas governed by the FSIA. *See e.g., Transaero*, 30 F.3d at 154.

Consider, for instance, the Supreme Court's recent decision in *Republic of Sudan v. Harrison*. 139 S. Ct. 1048. There, Navy servicemembers and their spouses sued the Republic of Sudan under the FSIA for injuries suffered in the USS *Cole* terrorist bombing. *Id.* at 1054. Believing that they were following the process laid out in § 1608(a)(3), the plaintiffs requested the clerk of the court send the service packet to the Embassy of the Republic of Sudan in Washington, D.C. *Id.* The Supreme Court held the delivery invalid because it did not follow the most natural reading of § 1608(a)(3), which required delivery to the foreign minister's home country. *Id.* at 1053, 1057. In this analogous context, *Harrison* is strong counsel that strict compliance with § 1608(a) is required. *See id.*

*Harrison* also forecloses the Plaintiffs' argument that actual delivery can cure technically deficient service. *See id.* at 1058. The Court noted that Congress omitted language about "actual notice" from § 1608(a)(3) but included it later in the same statute at § 1608(b). *See id.* ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."). More, the Court rejected an interpretation rooted in the due process principle "that service must be reasonably calculated to give notice." *Id.* (citations omitted).

Here, the former employees' direct mailing was not strictly compliant, as they themselves mailed the documents rather than the clerk of the court. The former employees seem to concede as much in their reply to this motion. In claiming only *substantial* compliance, the Plaintiffs implicitly recognize their failure to *strictly* comply with the statutory requirements. Pl.'s Opp'n ¶¶ 10-12. Given the clear standard established by both the plain language of the FSIA and our

higher courts, this Court finds that the former employees have failed to ensure proper service under 28 U.S.C. § 1608(a).

The Court notes that nothing in this ruling precludes the Plaintiffs from now effecting proper service in compliance with the statutory requirements.[2] Fed. R. Civ. P. 4(m) sets a ninety-day deadline for service on most types of parties, but service on a foreign state under 4(j)(1) is exempt from any time limit. Judges in this District have previously required a showing of "flexible due diligence" for cases in which plaintiffs have sought to serve foreign parties, which the former employees have shown here. *See Ashraf-Hassan v. Embassy of France in U.S.*, 878 F. Supp. 2d 164, 174 (D.D.C. 2012), *citing Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti, et al.*, 15 F. Supp. 2d 47, 49–50 (D.D.C.1998). Additionally, in most cases, "dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." *Barot*, 785 F.3d at 29. Since the former employees have already shown that service can be completed once the clerk of the court "addresse[s] and dispatche[s]" the required documents, the Plaintiffs may now attempt to correct the deficient service by strictly complying with 28 U.S.C. § 1608(a)(3).

As a final note, the Embassy cites *Transaero* to argue that service failed because the package was addressed to the "Head of the Foreign Ministry," rather than "the head of the ministry of foreign affairs" as described in § 1608(a)(3). Def. Mot. at n.2. The Court is not persuaded. Syntax was not the issue in *Transaero*; there the proper department had not been served at all. 30 F.3d at 153-54. Nor does the syntactic difference matter here, where the former employees addressed the package to the proper party. *See* Proof of Delivery. The defect in

---

[2] Plaintiffs filed an Amended Complaint along with their Memorandum in Opposition to this Motion. ECF No. 15. If Plaintiffs choose to effect proper service, the Amended Complaint and translation must be included in the service documents to be sent by the clerk of the court.

5

service was in the wrong sender, not the recipient. The former employees may correct this deficiency by using the clerk of the court to dispatch the documents.

## IV.

For all these reasons, it is hereby:

ORDERED that the Defendants' motion to quash service is GRANTED;

ORDERED that the Plaintiffs have leave to effect proper service pursuant to 28 U.S.C. § 1608(a)(3) and Fed. R. Civ. P. 4(j); and

ORDERED that the parties shall submit to the Court a Joint Status Report concerning the status of service on or before September 30, 2019.

SO ORDERED.

Dated: July 30, 2019

TREVOR N. McFADDEN
United States District Judge