**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TOSIN ADETORO**, *et al*., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:19-cv-01918-TNM** |
| | ) | |
| **KING ABDULLAH ACADEMY** *et al*., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO
STRIKE BY DEFENDANT THE EMBASSY OF THE KINGDOM OF SAUDI ARABIA**

Defendant The Embassy of the Kingdom of Saudi Arabia ("The Embassy") moves to dismiss all claims asserted against it in Plaintiffs' Second Amended Complaint in their entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6) and to strike Plaintiffs' demand for a jury trial and punitive damages. A Memorandum of Points and Authorities in support of the Motion are filed herewith.

Pursuant to Local Civil Rule 7(f), The Embassy respectfully requests that an oral hearing be held on its Motion to Dismiss.

Dated: September 10, 2020

Respectfully submitted,

_____/s/ Lori H. Turner_____
Edward Lee Isler, DC Bar No. 417076
Lori H. Turner, DC Bar No. 495530
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com

*Counsel for Defendant
The Embassy of the Kingdom of Saudi Arabia*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

>Phillis H. Rambsy, Esq.
>Rambsy Law PC
>315 Deaderick St., Suite 1550
>Nashville, TN 37238
>phillis@rambsylaw.com
>
>Francisco Mundaca, Esq.
>The Spiggle Law Firm, PC
>4830 31st Street, South, Suite A
>Arlington, VA 22206
>fmundaca@spigglelaw.com
>*Counsel for Plaintiffs*
>
>Haig V. Kalbian, Esq.
>Stephen C. Leckar, Esq.
>Evan M. Lisull, Esq.
>Kalbian Hagerty LLP
>888 17th Street NW, Suite 1000
>Washington, DC 20006
>hkalbian@kalbianhagerty.com
>sleckar@kalbianhagerty.com
>elisull@kalbianhagerty.com
>*Counsel for Defendant King Abdullah Academy*

>        /s/ Lori H. Turner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TOSIN ADETORO**, *et al.*,  ) | |
|  ) | |
| *Plaintiffs*,  ) | |
|  ) | |
| **v.**  ) | **Case No. 1:19-cv-01918-TNM** |
|  ) | |
| **KING ABDULLAH ACADEMY** *et al.*,  ) | |
|  ) | |
| *Defendants*.  ) | |
|  ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO STRIKE BY <u>DEFENDANT THE EMBASSY OF THE KINGDOM OF SAUDI ARABIA</u>

Edward Lee Isler, DC Bar No. 417076
Lori H. Turner, DC Bar No. 495530
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com

*Counsel for Defendant*
*The Embassy of the Kingdom of Saudi Arabia*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STANDARD OF REVIEW ........................................................................................... 1

III. STATEMENT OF FACTS ........................................................................................... 2

IV. ARGUMENT................................................................................................................. 9

    A.    The Foreign Sovereign Immunities Act's Jurisdictional Limitations, and Motion to Strike Plaintiffs' Demand for a Jury Trial and for Punitive Damages... 9

    B.    The Paucity of Facts Pled Demonstrate that The Embassy Was Not Plaintiffs' Joint Employer ..................................................................................................... 10

    C.    Sovereign Immunity Bars Plaintiffs' D.C. Human Rights Act Claims ............... 15

    D.    Plaintiffs Fail to Allege Any Adverse Acts Occurring or Being Felt in the District of Columbia ........................................................................................................ 17

    E.    Plaintiffs' DCHRA Claims Are Time-Barred Because They Did Not File Suit Within 1 Year of Discovery of the Alleged Unlawful Acts .......................... 18

    F.    The Title VII Claims of Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Javaheri, and Wilkins (as well as Greer and Schramm) are Time-Barred Because they Did Not File Their EEOC Charges Within 300 Days of the Alleged Unlawful Acts ........................................................................................ 21

    G.    Plaintiffs' Title VII Claims Are Time-Barred Because They Did Not File Suit Within 90 Days of Receipt of the EEOC's Right-to-Sue Notice .................. 24

    H.    Plaintiffs' Balduman, Javaheri, and Schramm Failed to Exhaust Their Administrative Remedies as to Race .................................................................... 26

    I.    Section 1981 of the Civil Rights Act of 1866 Does Not Apply to Foreign Sovereign Governments................................................................................... 27

    J.    Plaintiffs Cannot Demonstrate that Race Was the "But For" Cause of Their Terminations, as Required to State a Section 1981 Claim................................... 28

        1.    Plaintiffs Allege National Origin and Religion Were Causes for Their Termination. .................................................................................. 29

        2.    Plaintiffs Further Aver that KAA's Finances and Poor Performance Were Factors in Their Terminations....................................................... 32

V. CONCLUSION............................................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Am. Freedom Law Ctr. v. Obama*,
    821 F.3d 44 (D.C. Cir. 2016) ........................................................................................... 2

*\*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ..................................................................................................... 9-10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 1

*Astre v. McQuaid*,
    804 F. App'x 665 (9th Cir. 2020) ................................................................................. 33

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 1

*\*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
    734 F.3d 1175 (D.C. Cir. 2013) .................................................................................... 10

*Berry v. Coastal Int'l Sec., Inc.*,
    2016 WL 1060196 (D.D.C. 2016) ................................................................................ 30

*Boe v. Heart Clinic of Hammond, LLC*,
    2017 WL 5985571 (M.D. La. 2017) ............................................................................. 22

*Brown v. Nat'l Acad. of Scis.*,
    844 A.2d 1113 (D.C. 2004) .......................................................................................... 18

*Charles v. D.C. Dep't of Youth Rehab. Servs.*,
    690 F. App'x 14 (D.C. Cir. 2017) ................................................................................ 22

*Chisholm v. Lanier*,
    891 F. Supp. 2d 112 (D.D.C. 2012) ............................................................................. 24

*Coakley-Simelton v. Georgetown Univ.*,
    2020 WL 4569423 (D.D.C. 2020) ................................................................................ 21

*\*Comcast Corp. v. National Association of African American-Owned Media*,
    140 S. Ct. 1009 (2020) ................................................................................. 28-29, 32, 33

*Conn v. Am. Nat'l Red Cross*,
    149 F. Supp. 3d 136 (D.D.C. 2016) ........................................................................ 17, 18

*Del. State Coll. v. Ricks*,
    449 U.S. 250 (1980)..................................................................................... 18, 22

*Deppner v. Spectrum Health Care Resources, Inc.*,
    325 F. Supp. 3d 176 (D.D.C. 2018) ..............................................................26-27

*Doe v. Fed. Democratic Rep. of Ethiopia*,
    189 F. Supp. 3d 6 (D.D.C. 2016) ....................................................................... 16

*Doe v. Lee*,
    2020 WL 759177 (D.D.C. 2020) .................................................................. 12, 15

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003)............................................................................................ 9

*Durant v. D.C. Gov't*,
    875 F.3d 685 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 2608 (2018) ........................21-22

*Ekandem v. D.C.*,
    1994 WL 721490 (D.D.C. 1994) ...................................................................... 32

*Gibbons v. Republic of Ireland*,
    532 F. Supp. 668 (D.D.C. 1982) ....................................................................... 10

*Gulley v. District of Columbia*,
    2020 WL 4001471 (D.D.C. 2020) .................................................................... 26

*Haynes v. DC Water Is Life*,
    271 F. Supp. 3d 142 (D.D.C. 2017), *aff'd*, 924 F.3d 519 (D.C. Cir. 2019)................20-21

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89 (1990)............................................................................................ 24

*Johnson v. Local Lodge 1759*,
    2019 WL 2503909 (D.D.C. 2019) ...................................................................... 2

*Jordan v. Evans*,
    404 F. Supp. 2d 28 (D.D.C. 2005) .................................................................... 16

*\*Josiah-Faeduwor v. Commc'ns Satellite Corp.*,
    785 F.2d 344 (D.C. Cir. 1986) ..................................................................24, 25-26

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)............................................................................................ 1

*Kornyo v. Gonzaga Coll. High Sch.*,
  308 F. Supp. 3d 212 (D.D.C. 2018) ................................................................. 32

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) .......................................................................... 1

*Maggio v. Wis. Ave. Psychiatric Ctr., Inc.*,
  795 F.3d 57 (D.C. Cir. 2015) ........................................................................... 25

*Marcus v. Geithner*,
  813 F. Supp. 2d 11 (D.D.C. 2011) ................................................................... 16

*Miles v. Howard Univ.*,
  83 F. Supp. 3d 105 (D.D.C. 2015), *aff'd*, 653 F. App'x 3 (D.C. Cir. 2016) ...................... 14

*Moini v. LeBlanc*,
  2020 WL 1975786 (D.D.C. 2020) ............................................................... 30-31

*Moore v. U.S. Dept. of State*,
  351 F. Supp. 3d 76 (D.D.C. 2019) ..................................................................... 2

*Ndondji v. InterPark Inc.*,
  768 F. Supp. 2d 263 (D.D.C. 2011) ............................................................. 2, 32

*NLRB v. Browning-Ferris Indus. of Pa., Inc.*,
  691 F.2d 1117 (3d Cir. 1982) .......................................................................... 11

*Nurridin v. Bolden*,
  818 F.3d 751 (D.C. Cir. 2016) ........................................................................... 1

*Omene v. Accenture Fed. Servs.*,
  2020 WL 1189298 (D.D.C. 2020) ................................................................... 21

*Park v. Howard Univ.*,
  71 F.3d 904 (D.C. Cir. 1995) ........................................................................... 26

*Prince v. Rice*,
  453 F. Supp. 2d 14 (D.D.C. 2006) .............................................................. 27-28

*Redd v. Summers*,
  232 F.3d 933 (D.C. Cir. 2000) ......................................................................... 11

*Saint Francis College v. Al-Khazraji*,
  481 U.S. 604 (1987) ........................................................................................ 30

iv

*Samantar v. Yousuf,*
  560 U.S. 305 (2010) ........................................................................... 9

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ........................................................................... 1

*Schermerhorn v. Israel,*,
  235 F. Supp. 3d 249 (D.D.C. 2017) ................................................... 1

*Schuler v. Pricewaterhouse Coopers, LLP,*
  421 F. App'x 1 (D.C. Cir. 2011) ...................................................... 33

*Smith-Haynie v. D.C.,*
  155 F.3d 575 (D.C. Cir. 1998) ......................................................... 23

*Spirides v. Reinhardt,*
  613 F.2d 826 (D.C. Cir. 1979) ......................................................... 11

*Strong-Fisher v. LaHood,*
  611 F. Supp. 2d 49 (D.D.C. 2009) ................................................... 28

*\*Sturdza v. United Arab Emirates,*
  281 F.3d 1287 (D.C. Cir. 2002) ....................................................... 28

*\*Tovihlon v. Allied Aviation,Inc.,*
  323 F. Supp. 3d 6 (D.D.C. 2018) ..................................................... 17

*Verlinden B.V. v. Cent. Bank of Nigeria,*
  461 U.S. 480 (1983) ......................................................................... 10

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens,*
  529 U.S. 765 (2000) ......................................................................... 16

*Washington v. Wash. Metro Area Transit Auth.,*
  160 F.3d 750 (D.C. Cir. 1998) ......................................................23-24

*Wiley v. Johnson,*
  436 F. Supp. 2d 91 (D.D.C. 2006) ................................................... 24

*\*Williams v. Glickman,*
  936 F. Supp. 1 (D.D.C. 1996) .......................................................... 27

## **RULES**

Fed. R. Civ. P. 12(b)(1) .................................................................... 1, 2

Fed. R. Civ. P. 12(b)(6)......................................................................................... 1, 2

## **STATUTES**

*28 U.S.C. § 1330 ....................................................................................................... 10

28 U.S.C. § 1602 ........................................................................................................... 9

*28 U.S.C. § 1604 ......................................................................................................... 9

*28 U.S.C. § 1606 ....................................................................................................... 10

*42 U.S.C. § 1981 .................................................................................................... 27-28

42 U.S.C. § 1985 ......................................................................................................... 28

*42 U.S.C. § 2000e-5 ........................................................................................ 21, 22, 24

*D.C. Code § 2-1401.02 ....................................................................................... 15, 16

D.C. Code § 2-1402.11 ................................................................................................ 15

*D.C. Code § 2-1403.16 .............................................................................................. 18

## I.       INTRODUCTION

Defendant The Embassy of the Kingdom of Saudi Arabia ("The Embassy") submits this Memorandum in Support of its Motion to Dismiss all claims asserted against it in the Second Amended Complaint ("SAC") (ECF No. 30) with prejudice, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Motion to Strike Plaintiffs' demand for a jury trial and punitive damages.

## II.      STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "Under Federal Rule of Civil Procedure 12(b)(1), plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence."  *Schermerhorn v. Israel*, 235 F. Supp. 3d 249, 255 (D.D.C. 2017).  In accordance with the Foreign Sovereign Immunities Act ("FSIA"), "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993).

To survive a Rule 12(b)(6) motion to dismiss, a Plaintiff must allege enough facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court may "assume the truth of all well-pleaded factual allegations", it "need not, however 'accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint'" nor must it "accept legal conclusions couched as factual allegations."  *Nurridin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

1

As this Court has recognized, "[a] 'court may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for summary judgment because such records are public document[s] of which a court may take judicial notice.'" *Johnson v. Local Lodge 1759*, 2019 WL 2503909, n.5 (D.D.C. 2019) (McFadden, J.) (quoting *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011)). *See also Moore v. U.S. Dept. of State*, 351 F. Supp. 3d 76, 87 (D.D.C. 2019) (taking judicial notice of plaintiff's "EEO documents"). In addition, when considering motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court "may consider materials outside the pleadings." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016).

### III.   STATEMENT OF FACTS

1.      Defendant King Abdullah Academy ("KAA") is an international school, which opened in 2016 and which is located at 2949 Education Drive, Herndon, Virginia 20171. SAC ¶¶ 26, 70 and Complaint (ECF No. 1-1).

2.      The Embassy is the Kingdom of Saudi Arabia's "main and largest diplomatic mission in the United States", and is located at 601 New Hampshire Ave NW, Washington, DC 20037. SAC ¶ 27 and Complaint (ECF No. 1-1).

3.      The Embassy is a "foreign state" under the FSIA. *See, e.g.*, Memorandum and Order (ECF No. 18).

4.      The eight Plaintiffs (of varying races, national origins, and religions) are former employees of KAA, who were hired in 2016 and terminated in 2017. SAC ¶¶ 7, 18-25.

5.      None of the eight Plaintiffs are alleged to have been employed directly by The Embassy. SAC ¶¶ 18-25, 29.

6.      KAA terminated the employment of each of the Plaintiffs "purportedly in response

to financial issues which had arisen" with KAA. SAC ¶ 71.

7.      The Principal of KAA, Chris Faisandier, and Plaintiff Diane Wilkins, Human Resources Manager of KAA, "developed a list of KAA employees recommended for termination because of low performance scores." *See* SAC ¶ 43.

8.      Plaintiffs also allege – without any factual support – that KAA, "directed by the Embassy," made the termination decisions.  SAC ¶ 70.  However, nowhere in the SAC do Plaintiffs identify any Embassy official who allegedly directed KAA to make the termination decisions, nor do they plead where such decisions were allegedly made.

*Tosin Adetoro*

9.      "Plaintiff Tosin Adetoro is an African American Muslim woman born in Nigeria and raised in the United States."  SAC ¶ 18.  Ms. Adetoro commenced employment at KAA on July 11, 2016 and was informed on July 27, 2017 that she would not be offered a position for the 2017/2018 school year. *Id.*

10.     Ms. Adetoro filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 30, 2018 alleging discrimination based on race, religion, and national origin.  *See* **Exhibit 1** (Adetoro EEOC Charge).

11.     On June 6, 2018, the EEOC dismissed Ms. Adetoro's Charge against The Embassy for not being "timely filed."  *See* **Exhibit 2** (Adetoro EEOC Dismissal).

12.     On July 31, 2018, Ms. Adetoro submitted an Employment Intake Questionnaire with the District of Columbia Office of Human Rights ("OHR").  *See* **Exhibit 3** (Adetoro OHR Intake).

13.     The OHR dismissed Ms. Adetoro's complaint against The Embassy on September 10, 2018 stating, "[t]he OHR does not have jurisdiction to accept or investigate

complaints of discrimination against this Respondent."  *See* **Exhibit 4** (Adetoro OHR Dismissal).

*Barbara Balduman*

14.     "Plaintiff Barbara Balduman is a Caucasian, Catholic woman born and raised in the United States."  SAC ¶ 19.  Ms. Balduman commenced employment at KAA in June 2016 and was notified on July 17, 2017 of her termination, effective July 31, 2017.  SAC ¶¶ 7(b) and 19.

15.     Ms. Balduman filed a Charge of Discrimination with the EEOC on May 14, 2018 alleging discrimination based on religion and national origin.  *See* **Exhibit 5** (Balduman EEOC Charge).

16.     On May 15, 2018, the EEOC  dismissed Ms. Balduman's Charge against The Embassy for not being "timely filed."  *See* **Exhibit 6** (Balduman EEOC Dismissal).

17.     On July 16, 2018, Ms. Balduman submitted an Employment Intake Questionnaire with the OHR.  *See* **Exhibit 7** (Balduman OHR Intake).

18.     The OHR dismissed Ms. Balduman's complaint against The Embassy on September 12, 2018 stating it lacked "jurisdiction" over The Embassy.  *See* **Exhibit 8** (Balduman OHR Dismissal).

*Natasha Gaujean-La Mar*

19.     "Plaintiff Natasha Gaujean-La Mar is a Haitian/African-American, Catholic woman, who was born and raised in the United States."  SAC ¶ 20.

20.     Ms. Gaujean-La Mar commenced employment at KAA in July 2016 and was notified on July 17, 2017 that she would not be offered a position for the 2017/2018 school year.  *Id*.

21.     Ms. Gaujean-La Mar filed a Charge of Discrimination with the EEOC on May 30, 2018 alleging discrimination based on race, religion, and national origin.  *See* **Exhibit 9** (Gaujean-

La Mar EEOC Charge).

22.     On June 6, 2018, the EEOC  dismissed Ms. Gaujean-La Mar's Charge against The Embassy for not being "timely filed."  *See* **Exhibit 10** (Gaujean-La Mar EEOC Dismissal).

23.     On July 31, 2018, Ms. Gaujean-La Mar submitted an Employment Intake Questionnaire with the OHR.  *See* **Exhibit 11** (Gaujean-La Mar OHR Intake).

24.     The OHR dismissed Ms. Gaujean-La Mar's complaint against The Embassy on September 10, 2018 stating it lacked "jurisdiction" over The Embassy.  *See* **Exhibit 12** (Gaujean-La Mar OHR Dismissal).

*Alexis Greer*

25.     "Plaintiff Alexis Greer is an African-American woman, born and raised in the United States.  She does not identify with any specific religion."  SAC ¶ 21.

26.     Ms. Greer commenced employment at KAA on June 6, 2016 and was terminated on July 31, 2017.  *Id*.

27.     Ms. Greer filed a Charge of Discrimination with the EEOC on May 30, 2018 alleging discrimination based on race, religion, and national origin.  *See* **Exhibit 13** (Greer EEOC Charge).

28.     On June 6, 2018, the EEOC  dismissed Ms. Greer's Charge against The Embassy for not being "timely filed."  *See* **Exhibit 14** (Greer EEOC Dismissal).

29.     On July 26, 2018, Ms. Greer submitted an Employment Intake Questionnaire with the OHR.  *See* **Exhibit 15** (Greer OHR Intake).

30.     The OHR dismissed Ms. Greer's complaint against The Embassy on September 10, 2018 stating it lacked "jurisdiction" over The Embassy.  *See* **Exhibit 16** (Greer OHR Dismissal).

*Kethurah Williams Howell*

31.    "Dr. Kethurah Williams Howell is an African-American, Christian woman who was born in the Bahamas and raised in Trinidad & Tobago."  SAC ¶ 22.

32.    Dr. Howell commenced employment at KAA on August 1, 2016 and was terminated on July 27, 2017.  *Id*.

33.    Dr. Howell filed a Charge of Discrimination with the EEOC on May 14, 2018 alleging discrimination based on race, religion, and national origin.  *See* **Exhibit 17** (Howell EEOC Charge).

34.    On May 15, 2018, the EEOC  dismissed Dr. Howell's Charge against The Embassy for not being "timely filed."  *See* **Exhibit 18** (Howell EEOC Dismissal).

35.    Dr. Howell submitted an Intake Questionnaire with the OHR.  SAC ¶ 8.

36.    The OHR dismissed Dr. Howell's complaint against The Embassy on September 10, 2018 or September 12, 2018.  SAC ¶ 9.

*Sepideh Javaheri*

37.    "Plaintiff Sepideh Javaheri is an Iranian, Shia Muslim woman, who was raised in Iran."  SAC ¶ 23.

38.    Ms. Javaheri commenced employment at KAA in August 2016 and was terminated on July 31, 2017.  *Id*.

39.    Ms. Javaheri filed a Charge of Discrimination with the EEOC on May 30, 2018 alleging discrimination based on religion and national origin.  *See* **Exhibit 19** (Javaheri EEOC Charge).

40.    On June 6, 2018, the EEOC  dismissed Ms. Javaheri's Charge against The Embassy for not being "timely filed."  *See* **Exhibit 20** (Javaheri EEOC Dismissal).

41.     On July 30, 2018, Ms. Javaheri submitted an Employment Intake Questionnaire with the OHR.  *See* **Exhibit 21** (Javaheri OHR Intake).

42.     The OHR dismissed Ms. Javaheri's complaint against The Embassy on September 10, 2018 stating it lacked "jurisdiction" over The Embassy.  *See* **Exhibit 22** (Javaheri OHR Dismissal).

*Michael Schramm*

43.     "Plaintiff Michael Schramm is a Caucasian man who was born and raised in the United States.  Dr. Schramm is not Muslim."  SAC ¶ 24.

44.     Dr. Schramm commenced employment at KAA on October 3, 2016 and was notified during "the third week of July 2017" that his employment was being terminated.  *Id*.

45.     Dr. Schramm filed a Charge of Discrimination with the EEOC on May 30, 2018 alleging discrimination based on religion and national origin.  *See* **Exhibit 23** (Schramm EEOC Charge).

46.     On June 6, 2018, the EEOC dismissed Dr. Schramm's Charge against The Embassy for not being "timely filed."  *See* **Exhibit 24** (Schramm EEOC Dismissal).

47.     On July 27, 2018, Dr. Schramm submitted an Employment Intake Questionnaire with the OHR.  *See* **Exhibit 25** (Schramm OHR Intake).

48.     The OHR dismissed Dr. Schramm's complaint against The Embassy on September 10, 2018 stating it lacked "jurisdiction" over The Embassy. *See* **Exhibit 26** (Schramm OHR Dismissal).

*Diane Wilkins*

49.     "Plaintiff Diane Wilkins is an African-American, Christian woman who was born and raised in the United States."  SAC ¶ 25.

50.     Ms. Wilkins commenced employment at KAA on March 1, 2016 and was notified on July 26, 2017 that her employment was being terminated.  Ms. Wilkins' last day of employment with KAA was July 31, 2017.  *Id*.

51.     Ms. Wilkins filed a Charge of Discrimination with the EEOC on May 30, 2018 alleging discrimination based on race, religion, and national origin.  *See* **Exhibit 27** (Wilkins EEOC Charge).

52.     On June 6, 2018, the EEOC  dismissed Ms. Wilkins' Charge against The Embassy for not being "timely filed."  *See* **Exhibit 28** (Wilkins EEOC Dismissal).

53.     On July 27, 2018, Ms. Wilkins submitted an Employment Intake Questionnaire with the OHR.  *See* **Exhibit 29** (Wilkins OHR Intake).

54.     The OHR dismissed Ms. Wilkins' complaint against The Embassy on September 10, 2018 stating it lacked "jurisdiction" over The Embassy.  *See* **Exhibit 30** (Wilkins OHR Dismissal).

*The District of Columbia OHR Appeal*

55.     On September 25, 2018, Plaintiffs appealed the OHR's determination that it lacked jurisdiction over their claims. The OHR denied the appeal on December 18, 2018.  SAC ¶¶ 11-12.

*Plaintiffs' Allegations*

56.     Plaintiffs allege that, following "the conclusion of the 2016-2017 academic year, its first year in existence, KAA, directed by the Embassy, terminated a number of non-Saudi Arabian, non-Sunni Muslim employees" including Plaintiffs.  SAC ¶ 70.

57.     Plaintiffs allege three causes of action in the SAC against The Embassy:

(i)     Count I – Race, religion, and national origin discrimination in violation of the DC Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq*., as to all Plaintiffs;

      (ii)      Count II – Race discrimination in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as to all Plaintiffs; and

      (iii)    Count III – Race, religion, and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as to Ms. Adetoro, Ms. Balduman, Ms. Gaujean-La Mar, Dr. Howell, Ms. Javaheri, and Ms. Wilkins (not as to Plaintiffs Greer or Schramm);

As shown below, each of these counts is flawed as to The Embassy and must be dismissed.

## IV. ARGUMENT

**A.**    **The Foreign Sovereign Immunities Act's Jurisdictional Limitations, and Motion to Strike Plaintiffs' Demand for a Jury Trial and for Punitive Damages.**

Congress enacted the FSIA in 1976 "to endorse and codify the restrictive theory of sovereign immunity, and [] to transfer primary responsibility for deciding 'claims of foreign states to immunity' from the State Department to the courts." *Samantar v. Yousuf*, 560 U.S. 305, 313 (2010) (quoting 28 U.S.C. § 1602). The FSIA was enacted to give foreign states "some protection from the inconvenience of suit as a gesture of comity." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 469 (2003).

As the U.S. Supreme Court has observed, the "subject-matter jurisdiction of the lower federal courts is determined by Congress" and "the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state." *Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 433-34 (1989). The FSIA expressly provides, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" subject to certain limited exceptions. 28 U.S.C. § 1604. Consequently, "the FSIA 'must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity.'" *Argentine Republic*, 488 U.S. at 434-

35 (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983)).

   As the Court of Appeals for the District of Columbia has recognized, "the FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013). Here, Plaintiffs have not alleged, in the SAC or otherwise, that any of the FSIA's exceptions apply; without an exception, this Court lacks subject matter jurisdiction over The Embassy.

   Even if an exception to the FSIA applies, which The Embassy contests, the Court must strike Plaintiffs' demand for a jury trial and for punitive damages, as the FSIA does not allow them. Specifically, Section 1330(a) of the FSIA provides, "district courts shall have original jurisdiction without regard to amount in controversy of any *nonjury* civil action against a foreign state." 28 U.S.C. § 1330(a) (emphasis added). *See also Verlinden*, 461 U.S. at 489-90 (recognizing the FSIA only allows for a nonjury trial). Similarly, Section 1606 of the FSIA provides, "as to any claim for relief with respect to which a foreign state is not entitled to immunity…, the foreign state… *shall not be liable for punitive damages*." 28 U.S.C. § 1606 (emphasis added). *See also Gibbons v. Republic of Ireland*, 532 F. Supp. 668, 671 (D.D.C. 1982) ("a foreign state cannot be held liable for punitive damages"). Accordingly, the Court must strike Plaintiffs' demand for a jury trial and for punitive damages as to The Embassy.

## B.   The Paucity of Facts Pled Demonstrate that The Embassy Was Not Plaintiffs' Joint Employer.

   Throughout the SAC, Plaintiffs acknowledge that they were employed by KAA. *See* SAC ¶¶ 18-25, 29. However, they aver that "KAA and the Embassy were Plaintiffs' joint employers." SAC ¶ 28. Under the DCHRA and Title VII, a party may be considered a joint employer of a worker employed by another if the entity in question "retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the

other employer." *Redd v. Summers*, 232 F.3d 933, 938 (D.C. Cir. 2000) (quoting *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)). The "extent of the employer's right to control the means and manner of the worker's performance is the most important factor to review." *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979).

Here, however, other than vague and generalized allegations, the SAC is devoid of any facts demonstrating that The Embassy retained sufficient control over the terms of Plaintiffs' employment to establish joint employer liability under the DCHRA or Title VII. The scant allegations pled by Plaintiffs involving The Embassy are as follows:

- A hearsay allegation that a member of KAA's pastoral team told Ms. Adetoro that "KAA representatives and the Embassy would not listen to a Black woman." SAC ¶ 18.

- The allegation that the "Ambassador to the Saudi Embassy approved the hiring of Nadia Yousef", who "[o]n information and belief", is Saudi Arabian and Muslim, to replace Plaintiff Wilkins. SAC ¶ 25.

- "Suleiman Almoziel, an employee of the Embassy, was in charge of overseeing the financial operations of KAA" and "[a]ll financial activities".[1] SAC ¶¶ 31-32.

- "KAA had to obtain the approval of the Embassy in order to disburse funds for payroll" and correspondence from Mr. Faisandier to an unnamed "Saudi official at the Embassy" requested funds to cover payroll. SAC ¶¶ 33-34. Correspondence from KAA's Finance and Operations Manager "indicated that KAA was awaiting [] approvals on checks from" unnamed "Embassy officials." SAC ¶ 35.

- A hearsay allegation that "staff in the Athletic Department" were informed by an unnamed individual that The Embassy had not approved the funds needed to purchase equipment. SAC ¶ 36.

---

[1] The SAC also sweepingly alleges that Mr. Almoziel managed all employees at KAA. SAC ¶ 32. However, this allegation is contradicted by the SAC itself. For example, Ms. Adetoro's "direct supervisor was Dr. Shiree Slade, an African woman". SAC ¶ 18. "Ms. Balduman reported directly to Chris Faisandier, the principal of KAA." SAC ¶ 19. "Ms. Greer reported directly to Plaintiff Barbara Balduman." SAC ¶ 21. Mr. Schramm was the Deputy Executive Principal, "working in close partnership with the Executive Principal, Chris Faisandier." SAC ¶ 24. "Ms. Wilkins reported directly to Chris Faisandier". SAC ¶ 25.

- The vague and unsupported allegation that, "[o]n information and belief, the Embassy issued directives to Mr. Faisandier that he follow personnel decisions and operational functions at KAA."  SAC ¶39.

- The unsupported allegation that an unnamed Embassy official prevented Mr. Faisandier from terminating an administrative assistant.  SAC ¶¶ 40, 48.

- The unsupported allegation that, on information and belief, The Embassy directed KAA personnel on resolving complaints made by KAA students and disciplining KAA students, SAC ¶¶ 41-42, and, that parents of students were advised to direct complaints to The Embassy.  SAC ¶ 46.

- The vague and unsupported allegation that Mr. Faisandier received a directive from an unnamed individual at The Embassy "ordering him to stop contacting the students about the issues of racial discrimination."  SAC ¶ 51.

- The unsupported allegation that The Embassy "required KAA representatives to allow" a staff member to return to her position following the death of her husband.  SAC ¶¶ 55, 58.

- "After the conclusion of the 2016-2017 academic year, its first year in existence, KAA, directed by the Embassy, terminated a number of non-Saudi Arabian, non-Sunni Muslim employees" "purportedly in response to financial issues which had arisen." SAC ¶¶ 70-71.

As discussed below, these *de minimis*, and often unsubstantiated, allegations are insufficient to subject The Embassy to joint liability.

Specifically, Plaintiffs' have failed to demonstrate that The Embassy "controlled the terms and conditions of [their] employment" so as to be considered their joint employer.  *Doe v. Lee*, 2020 WL 759177, at *8 (D.D.C. 2020).  At best, the allegations in the SAC suggest that financial activities at KAA were managed by The Embassy and that The Embassy provided some limited input into a few personnel situations (notably not to Plaintiffs' personnel situations), such as insisting that KAA allow an employee to return to KAA following the death of her husband.  *See* SAC ¶¶ 25, 31-36; 40; 41-42; 54-58. These allegations do not show that The Embassy had any control in the day-to-day manner by which Plaintiffs performed their jobs, or that The Embassy had any role in establishing work rules, assignments, or other terms and conditions of employment affecting Plaintiffs.

Indeed, Plaintiffs admit in the SAC that they were directly supervised by other KAA employees (and in some cases each other), not Embassy officials. *See, e.g.,* SAC ¶ 18 (Ms. Adetoro's "direct supervisor was Dr. Shiree Slade, an African woman, and the Director of Teaching and Learning"); SAC ¶ 19 ("Ms. Balduman reported directly to Chris Faisandier, the principal of KAA"); SAC ¶ 21 ("Ms. Greer reported directly to Plaintiff Barbara Balduman"); SAC ¶ 24 (Mr. Schramm, as the Deputy Executive Principal, "work[ed] in close partnership with the Executive Principal, Chris Faisandier"); SAC ¶ 25 ("Ms. Wilkins reported directly to Chris Faisandier").

Moreover, the SAC establishes that Plaintiffs themselves maintained oversight of the day-to-day operations of KAA and its staff, not The Embassy.  For example, "Ms. Adetoro was in charge of the STEM and Science Department and the direct supervisor of eighteen (18) teachers." SAC ¶ 18.  Ms. Balduman "was responsible for developing and implementing policies and procedures, hiring administrative staff, managing the registration process, and testing and enrolling students."  SAC ¶ 19.  Ms. Gaujean-La Mar was responsible for "allocating funds and purchasing educational resources for staff and students while also managing the instructional technology team."  SAC ¶ 20.  "Ms. Greer began employment at KAA in an administrative role" and "helped create" student records and monitor surveillance.  SAC ¶ 21.  Dr. Schramm was responsible for "evaluating and advancing KAA's practices and systems of all aspects of teaching and learning," and "supervising and evaluating other KAA staff".  SAC ¶ 24.  "Ms. Wilkins' job responsibilities included providing strategic and operational day-to-day human resources leadership, ensuring compliance with federal and state laws and regulations relative to compensation, benefits, employment, payroll, and workers' compensation, and supervised staff in the HR department." SAC ¶ 25.

The paucity of facts alleged in the SAC about the level of control by The Embassy are similar to those alleged by the plaintiff in *Miles v. Howard Univ.*, 83 F. Supp. 3d 105, 117 (D.D.C. 2015), *aff'd*, 653 F. App'x 3 (D.C. Cir. 2016).  In *Miles*, the Court granted summary judgment for defendant Howard University ("Howard"), finding that it was not a joint employer with the plaintiff's actual employer, the University of the District of Columbia School of Business ("UDC").  The court reasoned that, although the "plaintiff ma[de] much of the fact that Howard was 'solely responsible for the oversight of the daily operations of the UDC'" and had to "concur in the appointment of" employment candidates, there was no evidence that Howard handled "personnel matters such as workplace rules and conditions of employment".  83 F. Supp. 3d at 117-18.  For example, the court noted that UDC's leave policies governed the plaintiff's employment, the plaintiff's health benefits were maintained by UDC, UDC paid social security benefits on the plaintiff's behalf, and the plaintiff reported to UDC's campus, not Howard's campus.  *Id*. at 118.  In concluding that Howard was not a joint employer, the court noted that, tellingly, following her termination of employment, she listed UDC as her employer and the Dean of UDC as her immediate supervisor.  *Id*. at 116.

The same is true here; while The Embassy may have had generalized oversight of KAA's finances, throughout the SAC, Plaintiffs acknowledge that they were employed by KAA and supervised by KAA employees.  *See* SAC ¶¶ 18-25, 29.  Plaintiffs do not allege anywhere in the SAC that they reported to The Embassy's worksite or that The Embassy controlled the terms and conditions of their employment.  For example, the SAC is devoid of any allegations that the Plaintiffs were on The Embassy's health insurance plan, that they were subject to The Embassy's vacation/sick leave policies, and that The Embassy oversaw their day-to-day activities or set their

work schedules.  Instead, the SAC makes clear that Plaintiffs, themselves, maintained oversight of the day-to-day operations of KAA and its employees.  SAC ¶¶ 18-25.

Without any factual basis, the SAC pleads in a conclusory fashion, "[o]n information and belief, the Embassy issued directives to [Principal] Faisandier that he follow personnel decision and operational functions at KAA" and "KAA, directed by the Embassy, terminated a number of non-Saudi Arabian, non-Sunni Muslim employees" at the conclusion of KAA's 2016-2017 academic year.  SAC ¶ 39, 70.  Tellingly, however, Plaintiffs factual allegations belie these legal conclusions, as Plaintiffs admit that KAA Principal Faisandier and Plaintiff Wilkins, the former KAA Human Resources Manager, "developed a list of KAA employees recommended for termination because of low performance scores." SAC ¶ 43.  Allegations that are "conclusory and devoid of any factual support", as well as those that are "refuted by the complaint" cannot be used resuscitate a failing joint employer claim.  *Doe*, 2020 WL 759177 at *8.  Accordingly, the Court should dismiss Plaintiffs' DCHRA and Title VII claims with prejudice because The Embassy was not Plaintiffs' joint employer.

C.      **Sovereign Immunity Bars the Plaintiffs' D.C. Human Rights Act Claims.**

The DCHRA prohibits an "employer" from discriminating on the basis of race, national origin, and religion. D.C. Code § 2-1402.11(a)(1)(A).  The DCHRA defines the term "employer" as "any person who, for compensation, employs an individual..."  D.C. Code § 2-1401.02(10).  "Person" is defined as "any individual, firm, partnership, mutual company, joint-stock company, corporation, association, organization, unincorporated organization, labor union, government agency, incorporated society, statutory or common-law trust, estate, executor, administrator, receiver, trustee, conservator, liquidator, trustee in bankruptcy, committee, assignee, officer, employee, principal or agent, legal or personal representative, real estate broker or salesman or

any agent or representative of any of the foregoing."  D.C. Code § 2-1401.02(21).  Notably absent from this list are foreign sovereigns, such as The Embassy.

When confronted with whether the federal government was an "employer" subject to the DCHRA or instead entitled to sovereign immunity, the courts in this District have consistently held that the DCHRA does not apply.  *See, e.g., Marcus v. Geithner*, 813 F. Supp. 2d 11, 17 (D.D.C. 2011); *Jordan v. Evans*, 404 F. Supp. 2d 28, 31 (D.D.C. 2005).  This same reasoning has been applied to foreign governments due to the "'longstanding interpretative presumption that 'person' does not include the sovereign,'" including when the sovereign is a "foreign state." *Doe v. Fed. Democratic Rep. of Ethiopia*, 189 F. Supp. 3d 6, 12 (D.D.C. 2016) (holding that the Wiretap Act's definition of "person" did not include a foreign state) (quoting *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, (2000)).

The District of Columbia Office of Human Rights also recognized that The Embassy is not a "person" covered by the DCHRA.  Indeed, almost immediately after receiving Plaintiffs' Intake Questionnaires, the OHR dismissed the complaints, writing: "The *OHR does not have jurisdiction* to accept or investigate complaints of discrimination against this Respondent." **Exhibit 4** (Adetoro OHR Dismissal); **Exhibit 8** (Balduman OHR Dismissal);  **Exhibit 12** (Gaujean-La Mar OHR Dismissal); **Exhibit 16** (Greer OHR Dismissal); **Exhibit 22** (Javaheri OHR Dismissal); **Exhibit 26** (Schramm OHR Dismissal); **Exhibit 30** (Wilkins OHR Dismissal) (emphasis added).  *See also* SAC ¶ 9 (Plaintiffs' OHR charges were dismissed for "lack of jurisdiction").  Because The Embassy is not a "person" covered by the DCHRA, the Court should dismiss all of Plaintiffs' DCHRA claims against The Embassy with prejudice.

**D.      Plaintiffs Fail to Allege Any Adverse Acts Occurring or Being Felt in the District of Columbia.**

The Court lacks subject matter jurisdiction over Plaintiffs' DCHRA claims for the additional reason that the SAC is devoid of any allegations of adverse actions occurring or being felt in the District of Columbia.  None of the Plaintiffs are residents of the District of Columbia; KAA is located in Herndon, Virginia, and all of the Plaintiffs worked at KAA in Virginia.  *See* Complaint (ECF No. 1-1).  *See also* SAC ¶ 29.  The District of Columbia Office of Human Rights dismissed the Plaintiffs' OHR complaints on this additional ground, writing, "the OHR has jurisdiction to investigate acts of discrimination *that take place in the District of Columbia only*." **Exhibit 4** (Adetoro OHR Dismissal); **Exhibit 8** (Balduman OHR Dismissal); **Exhibit 12** (Gaujean-La Mar OHR Dismissal); **Exhibit 16** (Greer OHR Dismissal); **Exhibit 22** (Javaheri OHR Dismissal); **Exhibit 26** (Schramm OHR Dismissal); **Exhibit 30** (Wilkins OHR Dismissal) (emphasis added).  *See also* SAC ¶ 9 (Plaintiffs' OHR charges were dismissed for "lack of jurisdiction").

The facts of this case are strikingly similar to those in *Tovihlon v. Allied Aviation*, *Inc.*, 323 F. Supp. 3d 6 (D.D.C. 2018), where the court dismissed the plaintiff's DCHRA claims for lack of subject matter jurisdiction.  In *Tovihlon*, the plaintiff worked at Reagan Airport in Virginia but claimed the DCHRA was applicable because the defendant "maintain[ed] an office in the District of Columbia [and] decisions relating to the plaintiff must have taken place in the District of Columbia." *Id*. at 19-20.  The court dismissed the plaintiff's DCHRA claims reasoning that "[a]ll of the actions that the plaintiff allege[d] constitute[d] discrimination occurred at Reagan Airport, which is located in Virginia and beyond the jurisdiction of the D.C. Human Rights Law" and that the "D.C. Office of Human Rights [also] arrived at that same conclusion regarding jurisdiction". *Id*. at 19-20.  *See also Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 151 (D.D.C. 2016)

(dismissing the plaintiff's DCHRA claim where the decision to terminate the plaintiff's employment was made in Minnesota and the plaintiff was located in Florida on the ground that it was "not [] enough to establish subject matter jurisdiction under the DCHRA [by] simply [] show[ing] that the company is headquartered [in DC] or has offices [in DC]").

Because Plaintiffs have failed to allege any acts occurring or being felt in the District of Columbia, Count I should be dismissed against The Embassy with prejudice.

**E.**     **Plaintiffs' DCHRA Claims Are Time-Barred Because They Did Not File Suit Within 1 Year of Discovery of the Alleged Unlawful Acts.**

Even if the Court concludes that it has subject matter jurisdiction under the DCHRA, Plaintiffs' claims under the DCHRA are, nonetheless, time-barred.  Specifically, the DCHRA provides that a "private cause of action" shall be filed "within one year of the unlawful discriminatory act, or the discovery thereof."  D.C. Code § 2-1403.16(a).  Notwithstanding the fact that the "timely filing of a complaint with the Office [of Human Rights]… toll[s] the running of the statute of limitations while the complaint is pending", Plaintiffs have failed to timely file the instant action.  *Id*.

Plaintiffs were notified that they were being terminated and were terminated from KAA in July 2017.  SAC ¶ 7.[2]  Plaintiffs filed their Intake Questionnaires with the OHR in July 2018.  *See* **Exhibit 3** (Adetoro OHR Intake); **Exhibit 7** (Balduman OHR Intake); **Exhibit 11** (Gaujean-La

---

[2] Although some of the Plaintiffs were notified of their termination from KAA before the actual date on which the termination occurred, the notification date is the operative date for when the statute of limitations begins to run.  *See Brown v. Nat'l Acad. of Scis.*, 844 A.2d 1113, 1118 (D.C. 2004) ("'discrimination occur[s]—and the filing limitations period therefore commence[s]—at the time the ... decision [to terminate] was made and communicated to [the plaintiff]'" even though the effects of the decision may not be felt until later) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).

Mar OHR Intake); **Exhibit 15** (Geer OHR Intake); **Exhibit 21** (Javaheri OHR Intake); **Exhibit 25** (Schramm OHR Intake); **Exhibit 29** (Wilkins OHR Intake).[3]   The OHR dismissed Plaintiffs' complaints for lack of jurisdiction between September 10, 2018 and September 12, 2018. SAC ¶ 9.  On September 25, 2018 (13 and 15 days from when the OHR dismissed the complaints), Plaintiffs appealed the OHR's dismissal.  SAC ¶ 11.   The OHR denied Plaintiffs' appeal on December 18, 2018, the same day Plaintiffs' filed the instant action.  SAC ¶ 12; ECF No. 1-1 (Complaint).

As the chart below reflects, excluding the time period when Plaintiffs' Intake Questionnaires and appeals were pending with the OHR, Plaintiffs' DCHRA claims are untimely because they were not filed within one year of the discovery of the alleged unlawful act.  This is true even if the Court considers the time period during which the Plaintiffs' Charges of Discrimination were pending with the EEOC as additional tolling time.

| Plaintiff | Time Elapsed Between Date of Discovery of Unlawful Act / Termination and OHR Intake Date | Time Elapsed Between OHR Dismissal Date and OHR Appeal Date | Time Elapsed Between EEOC Charge and EEOC Dismissal (Tolling Time Period) | Time Elapsed Between Discovery of Unlawful Act / Termination and Initial Complaint with Superior Court (Excluding Tolling Periods) |
|---|---|---|---|---|
| **Adetoro** | 07/27/17 to 07/31/18 = 369 days | 09/10/18 to 09/25/18 = 15 days | 05/30/18 to 06/06/18 = (7 days) | 369+15–7 = 377 days |

[3] Although counsel for The Embassy has submitted a Freedom of Information Act request to the OHR for a copy of Plaintiff Howell's OHR documents, including the Intake Questionnaire and dismissal, counsel has yet to receive such documents and avers that Plaintiff Howell filed her Intake Questionnaire with the OHR at the earliest on July 17, 2018, like the other Plaintiffs who are all represented by the same counsel.

| | | | | |
|---|---|---|---|---|
| **Balduman** | 07/17/17 to 07/16/18 = 364 days | 09/12/18 to 09/25/18 = 13 days | 05/14/18 to 05/15/18 = (1 day) | 364+13–7 = 376 days |
| **Gaujean-La Mar** | 07/17/17 to 07/31/18 = 379 days | 09/10/18 to 09/25/18 = 15 days | 05/30/18 to 06/06/18 = (7 days) | 379+15–7 = 387 days |
| **Greer** | 07/31/17 to 07/26/18 = 360 days | 09/10/18 to 09/25/18 = 15 days | 05/30/18 to 06/06/18 = (7 days) | 360+15–7 = 368 days |
| **Howell** | 07/27/17 to 07/17/18 = 355 days | 09/12/18 to 09/25/18 = 13 days | 05/14/18 to 05/15/18 = (1 day) | 355+13-1 = 367 days |
| **Javaheri** | 07/31/17 to 07/30/18 = 364 days | 09/10/18 to 09/25/18 = 15 days | 05/30/18 to 06/06/18 = (7 days) | 364+15–7 = 372 days |
| **Schramm** | 07/28/17[4] to 07/27/18 = 364 days | 09/10/18 to 09/25/18 = 15 days | 05/30/18 to 06/06/18 = (7 days) | 364+15–7 = 372 days |
| **Wilkins** | 07/26/17 to 07/27/18 = 366 days | 09/10/18 to 09/25/18 = 15 days | 05/30/18 to 06/06/18 = (7 days) | 366+15–7 = 374 days |

*See* **Exhibits 1-30** (EEOC Charges and Dismissals and OHR Intake Questionnaires and Dismissals). *See also* SAC ¶¶ 7-12.

Because Plaintiffs did not file suit within one year of the discovery of their alleged terminations, their DCHRA claims against The Embassy are untimely and should be dismissed with prejudice. *See, e.g., Haynes v. DC Water Is Life*, 271 F. Supp. 3d 142, 160 (D.D.C. 2017) (granting summary judgment for employer on the grounds that the plaintiff filed his lawsuit

---

[4] Dr. Schramm was notified of his termination from KAA during the third week of July 2017. SAC ¶ 7(g).

"roughly four months after the DCHRA's one-year limitations period expired" excluding any tolled time), *aff'd*, 924 F.3d 519 (D.C. Cir. 2019); *Coakley-Simelton v. Georgetown Univ.*, 2020 WL 4569423, at *7 (D.D.C. 2020) (holding that plaintiff's DCHRA claim was time-barred even taking into account the time period that was tolled).

**F.**      **The Title VII Claims of Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Javaheri, and Wilkins (as well as Greer and Schramm) are Time-Barred Because They Did <u>Not File Their EEOC Charges within 300 Days of the Alleged Unlawful Acts</u>.[5]**

Prior to filing a civil action under Title VII, a plaintiff must first file a charge of discrimination with the EEOC or the applicable state/local human rights agency within 300 days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1) (a Title VII charge "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred… except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency … such charge shall be filed … within three hundred days").

Where a plaintiff fails to file his or her charge of discrimination within the requisite 300-day time period, dismissal of the claims under Title VII is warranted. *See, e.g.*, *Omene v. Accenture Fed. Servs.*, 2020 WL 1189298 (D.D.C. 2020) (McFadden, J.) (dismissing the plaintiffs' Title VII claims as untimely where she failed to file her EEOC Charge within 300 days of the alleged adverse actions). *See also Durant v. D.C. Gov't*, 875 F.3d 685 (D.C. Cir. 2017), (affirming dismissal of claim where the alleged conduct occurred more than 300 days before the plaintiff filed

---

[5] In the caption of Count III, Plaintiffs assert Title VII claims only as to Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Howell, Javaheri, and Wilkins, not Greer and Schramm. *See* SAC at page 16. However, the allegations in the body of Count III refer to "Plaintiffs" and do not distinguish this limited group. *See* SAC ¶¶ 106-119. For the avoidance of doubt, The Embassy has included arguments as to Plaintiffs Greer and Schramm but does not waive the fact that Plaintiffs Greer and Schramm have abandoned their Title VII claims against The Embassy.

his charge of discrimination), *cert. denied*, 138 S. Ct. 2608 (2018); *Charles v. D.C. Dep't of Youth Rehab. Servs.*, 690 F. App'x 14 (D.C. Cir. 2017) (affirming dismissal of complaint where the last alleged discriminatory act occurred outside of the 300-day time period).  Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Javaheri, and Wilkins (as well as Plaintiffs Greer and Schramm) failed to timely file their Charges with the EEOC within the required 300-day time period.

Plaintiffs were notified that they were being terminated and were terminated from KAA in July 2017.[6]  SAC ¶ 7.  Plaintiffs filed their EEOC Charges in May 2018.[7]  *See* **Exhibit 1** (Adetoro EEOC Charge); **Exhibit 5** (Balduman EEOC Charge); **Exhibit 9** (Gaujean-La Mar EEOC Charge); **Exhibit 19** (Javaheri EEOC Charge); and **Exhibit 27** (Wilkins EEOC Charge).  *See also* **Exhibit 13** (Greer EEOC Charge) **and Exhibit 23** (Schramm EEOC Charge).  As the chart below reflects, with the exception of Plaintiff Howell, the remaining Plaintiffs did not file their EEOC Charges within the requisite 300-day time period.

| Plaintiff | Date of Notification of Termination / Termination | EEOC Charge Filing Date | Time Elapsed Between Notification of Termination / Termination and EEOC Filing Date |
|---|---|---|---|
| Adetoro | 07/27/17 | 05/30/18 | 307 days |

---

[6] The date of notification of termination is the operative date for computing Title VII limitations time periods.  *See Ricks*, 449 U.S. at 259 (holding that the limitations period began to run when the plaintiff was notified of his termination, not on the actual termination date).

[7] With the exception of Plaintiff Howell, Plaintiffs signed their Charges several days before they filed them with the EEOC; however, it is the date that the Charges were received by the EEOC, not the signature date, that is the operative date for statute of limitations purposes.  *See* 42 U.S.C. § 2000e-5(e)(1) (a Title VII charge "shall be *filed*…") (emphasis added); *Boe v. Heart Clinic of Hammond, LLC*, 2017 WL 5985571, at *2 (M.D. La. 2017) ("A discrimination charge is considered 'filed' for purposes of 42 U.S.C. § 2000e-5 on the date the EEOC *receives* the charge, not the date the charge is signed or mailed") (emphasis in original).

| Balduman | 07/17/17 | 05/14/18 | 301 days |
| Gaujean-La Mar | 07/17/17 | 05/30/18 | 317 days |
| Greer | 07/31/17 | 05/30/18 | 303 days |
| Javaheri | 07/31/17 | 05/30/18 | 303 days |
| Schramm | 07/28/17[8] | 05/30/18 | 306 days |
| Wilkins | 07/26/17 | 05/30/18 | 308 days |

The EEOC also recognized the untimeliness of the Charges of Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Javaheri, and Wilkins (as well as Greer and Schramm) when it dismissed their claims on the following basis: "Your charge was *not timely filed* with the EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge."  *See* **Exhibit 2** (Adetoro EEOC Dismissal); **Exhibit 6** (Balduman EEOC Dismissal); **Exhibit 10** (Gaujean-La Mar EEOC Dismissal); **Exhibit 14** (Greer EEOC Dismissal); **Exhibit 20** (Javaheri EEOC Dismissal); **Exhibit 24** (Schramm EEOC Dismissal); and **Exhibit 28** (Wilkins EEOC Dismissal) (emphasis added).

To the extent Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Javaheri, and Wilkins (as well as Greer and Schramm) may try to assert their claims should be equitably tolled, equitable tolling may "be exercised only in extraordinary and carefully circumscribed circumstances." *Washington v. Wash. Metro Area Transit Auth.*, 160 F.3d 750, 753 (D.C. Cir. 1998) (quoting *Smith-Haynie v. D.C.*, 155 F.3d 575, 579-80 (D.C. Cir. 1998)).  Equitable tolling does not extend to cases like this one where the plaintiffs were represented by counsel at the EEOC stage, as such

---

[8] Dr. Schramm was notified of his termination from KAA during the third week of July 2017. SAC ¶ 7(g).

failure to adhere to the requisite limitations period is "at best a garden variety claim of excusable neglect." *Washington*, 160 F.3d at 753 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Thus, the Court should dismiss the Title VII claims of Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Javaheri, and Wilkins (as well as Greer and Schramm) against The Embassy with prejudice, as they were not filed within Title VII's 300-day limitations period. Further, although Plaintiff Howell arguably filed her EEOC Charge within the required time period, as discussed below, the Court should dismiss her Title VII claims against The Embassy as well because they were not filed within 90 days of the EEOC's right-to-sue notice.

**G. Plaintiffs' Title VII Claims Are Time-Barred Because They Did Not File Suit Within 90 Days of Receipt of the EEOC's Right-to-Sue Notice.[9]**

Title VII "affords a complainant 90 days after receipt of a right-to-sue notice from the Equal Opportunity Commission [] to bring suit in court." *Josiah-Faeduwor v. Commc'ns Satellite Corp.*, 785 F.2d 344, 344 (D.C. Cir. 1986). *See also* 42 U.S.C. § 2000e-5(f)(1) (requiring the EEOC to issue the right-to-sue notice and providing, "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge"). "Courts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day." *Chisholm v. Lanier*, 891 F. Supp. 2d 112, 115 (D.D.C. 2012) (quoting *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006)).

---

[9] As noted above, in the caption of Count III, Plaintiffs appear to assert Title VII claims only as to Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Howell, Javaheri, and Wilkins, not Greer and Schramm. *See* SAC at page 16. However, the allegations in the body of Count III refer to "Plaintiffs" and do not distinguish this limited group. *See* SAC ¶¶ 106-119. For the avoidance of doubt, The Embassy has included arguments as to all Plaintiffs, including Plaintiffs Greer and Schramm, but does not waive the fact that Plaintiffs Greer and Schramm have abandoned their Title VII claims against The Embassy.

"When the EEOC mails a right-to-sue notice, the presumptive day of receipt is three-to-five days after issuance and mailing." *Maggio v. Wis. Ave. Psychiatric Ctr., Inc*., 795 F.3d 57 n.1 (D.C. Cir. 2015).  As reflected in the chart below, the EEOC issued Plaintiffs' right-to-sue notices on May 15, 2018 and June 6, 2018; however, Plaintiffs did not file suit until December 18, 2018 – approximately 200 days later.  *See* **Exhibit 2** (Adetoro EEOC Dismissal); **Exhibit 6** (Balduman EEOC Dismissal); **Exhibit 10** (Gaujean-La Mar EEOC Dismissal); **Exhibit 14** (Greer EEOC Dismissal); **Exhibit 18** (Howell EEOC Dismissal); **Exhibit 20** (Javaheri EEOC Dismissal); **Exhibit 24** (Schramm EEOC Dismissal); and **Exhibit 28** (Wilkins EEOC Dismissal).

| Plaintiff | Date of Issuance of EEOC Right-To-Sue Notice | Time Elapsed Between Date of Issuance of Right-to-Sue and Date of Initial Complaint Filed with Superior Court (12/18/18) |
|---|---|---|
| Adetoro | 06/06/18 | 195 days |
| Balduman | 05/15/18 | 217 days |
| Gaujean-La Mar | 06/06/18 | 195 days |
| Greer | 06/06/18 | 195 days |
| Howell | 05/15/18 | 217 days |
| Javaheri | 06/06/18 | 195 days |
| Schramm | 06/06/18 | 195 days |
| Wilkins | 06/06/18 | 195 days |

Even taking into account three to five days for mailing, Plaintiffs' lawsuit was filed well outside the requisite 90-day time period to state viable claims under Title VII.  Plaintiffs' failure to meet the 90-day deadline is especially troubling in light of their ongoing representation by counsel throughout the EEOC Charge process and the instant litigation.  *See Josiah-Faeduwor*,

785 F.2d at 347 (affirming dismissal of plaintiff's Title VII claim for failure to file suit within 90 days and refusing to equitably toll the statute of limitations where the plaintiff's attorney had received the right-to-sue notice).  Because Plaintiffs' failed to file their lawsuit within the 90-day time period required by Title VII, the Court should dismiss Plaintiffs' Title VII claims against The Embassy with prejudice.  *See, e.g., Gulley v. District of Columbia*, __ F. Supp. 3d __, 2020 WL 4001471, at *5 (D.D.C. 2020) (McFadden, J.) (dismissing claim where the plaintiff did not file his lawsuit within the 90-day period required by Title VII).

**H.      Plaintiffs' Balduman, Javaheri, and Schramm Failed to Exhaust Their Administrative Remedies as to Race.[10]**

Plaintiffs Balduman, Javaheri, and Schramm do not allege discrimination based on race in their respective EEOC Charges of Discrimination.  *See* **Exhibit 5** (Balduman EEOC Charge); **Exhibit 19** (Javaheri EEOC Charge); and **Exhibit 23** (Schramm EEOC Charge).

A Title VII lawsuit is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations…[and] a court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  In *Park*, the Court dismissed the plaintiff's hostile work environment claim because, although she mentioned discrimination on the basis of sex and national origin, her charge lacked the words "hostile work environment claim" and any factual allegations supporting such a claim. *Id.* at 908-09.  *See also Deppner v. Spectrum*

---

[10] As noted above, Plaintiff Schramm does not appear to assert any Title VII claims in the caption of Count III.  *See* SAC at page 16.  However, the allegations in the body of Count III refer to "Plaintiffs" and do not appear to exclude Plaintiff Schramm.  *See* SAC ¶¶ 106-119.  For the avoidance of doubt, The Embassy has included an argument as to Plaintiff Schramm's failure to exhaust administrative remedies, but it does not waive the fact that Plaintiff Schramm has abandoned his Title VII claims against The Embassy.

*Health Care Resources, Inc.*, 325 F. Supp. 3d 176, 186 (D.D.C. 2018) (dismissing plaintiff's hostile-work-environment claim for failure to exhaust administrative remedies because plaintiff's EEOC complaint alleged only discrimination on the basis of national origin and could "not be read to encompass a hostile work environment claim").

It is clear from the EEOC Charges of Plaintiffs Balduman, Javaheri, and Schramm that none of them included race as a basis for discrimination, and they have not exhausted the administrative remedies requirement as to race. Therefore, Count III should be dismissed against The Embassy as to these Plaintiffs on the basis of race.

**I.      Section 1981 of the Civil Rights Act of 1866 Does Not Apply to Foreign Sovereign Governments.**

Section 1981 of the Civil Rights Act of 1866 (the "Act") provides:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

42 U.S.C. §1981(a).  The Act clarifies that the rights protected by Section 1981 "are protected against impairment by *nongovernmental* discrimination and impairment under color of State law." 42 U.S.C. §1981(c) (emphasis added).  Because The Embassy is a foreign sovereign government, it cannot be liable under Section 1981.

In light of the express language in 42 U.S.C. § 1981(c), courts have consistently held that claims under 42 U.S.C. § 1981(a) do not apply to the U.S. government, and its agencies, which have sovereign immunity from such claims.  *See, e.g., Williams v. Glickman*, 936 F. Supp. 1, 5 (D.D.C. 1996) (dismissing § 1981 claim "because the plaintiffs do not allege impairment of rights by nongovernmental discrimination or impairment under color of state law"); *Prince v. Rice*, 453

F. Supp. 2d 14, 25 (D.D.C. 2006) (dismissing claim because § 1981 "does not apply to actions taken under color of federal law"); *Strong-Fisher v. LaHood*, 611 F. Supp. 2d 49, 53 (D.D.C. 2009) ("instrumentalities of the federal government may not be sued under § 1981").  Likewise, because The Embassy is a foreign sovereign, the acts alleged by Plaintiffs in support of their Section 1981 claims are governmental and must be dismissed.

The U.S. Court of Appeals for the District of Columbia has similarly held, in *Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002), that a foreign sovereign, like The Embassy, cannot be liable under a related civil rights statute, 42 U.S.C. § 1985.  Specifically, in *Sturdza*, the plaintiff, a female architect, sued the United Arab Emirates ("UAE") asserting that the UAE conspired with a male architect to steal her design for the UAE's new Embassy building because the UAE did not want "to have a female chief architect for the construction of the Embassy."  *Id*. at 1306.  Among other claims, the plaintiff alleged a violation of 42 U.S.C. § 1985, which prohibits persons from "conspire[ing]… for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  The Circuit Court held that foreign sovereigns, such as the UAE, could not be held liable under this civil rights statute.  *Sturdza*, 281 F.3d at 1307.

Because Section 1981 of the Civil Rights Act of 1866 does not apply to foreign sovereign governments, Count II must be dismissed as against The Embassy with prejudice.

**J.      Plaintiffs Cannot Demonstrate that Race Was the "But For" Cause of Their Terminations, as Required to State a Section 1981 Claim.**

In *Comcast Corp. v. National Association of African American-Owned Media*, __ U.S. __, 140 S. Ct. 1009 (2020), the U.S. Supreme Court held that, for a plaintiff to succeed on a claim under 42 U.S.C. § 1981, the "plaintiff must initially plead and ultimately prove that, *but for* race, [the plaintiff] would not have suffered the loss of a legally protected right."  *Comcast Corp.*, 140

S. Ct. at 1019 (emphasis added).  In Count II of the SAC, Plaintiffs allege, in a conclusory fashion, that Defendants made employment decisions against them "based on [their] race, i.e., not Arabic/Arabian" and "gave preferential treatment to staff of KAA who were Arabic Middle Eastern."  SAC ¶¶ 97-98.  The allegations in the SAC, however, make clear that Plaintiffs' race was not the "but for" cause of their terminations, and Count II should be dismissed against The Embassy.

### 1. Plaintiffs Allege National Origin and Religion Were Causes for Their Terminations.

Throughout the SAC, Plaintiffs consistently characterize Defendants as providing preferential treatment to individuals based on their national origin (Saudi Arabian) and religion (Muslim) – not simply race.  The SAC contains the following factual allegations:

- KAA, with the approval of the Saudi Embassy Ambassador, hired Nadia Yousef to replace Ms. Wilkins.  "On information and belief Ms. Yousef is *Saudi Arabian and Muslim*."  SAC ¶ 25 (emphasis added).

- "On information and belief, the Embassy directed KAA personnel to refrain from disciplining students who were *Saudi Arabian and Muslim*."  SAC ¶ 42 (emphasis added).

- "Before the start of the 2016-2017 academic year, KAA began to give preference in hiring *Saudi Arabian*, *Sunni Muslim* candidates."  SAC ¶ 45 (emphasis added).

- "A *Saudi Arabian*, *Sunni Muslim* employee, Adeelah Alijuhanai" engaged in insubordinate behavior but was not terminated.  SAC ¶¶ 46-48 (emphasis added).

- "KAA teachers were counseled about the need to maintain strong relationships with *Saudi Arabian Sunni Muslim* students."  SAC ¶ 60 (emphasis added).

- "*Saudi Arabian Muslims* who were on the list recommended for termination were retained as employees of KAA."  SAC ¶ 68 (emphasis added).

- "Employees who were not *Saudi Arabian Muslims*, including African-American employees, and non-Saudi Arabian, non-Muslim employees, that appeared on the list were eventually terminated."  SAC ¶ 69 (emphasis added).

- "After the conclusion of the 2016-2017 academic year, its first year in existence, KAA, directed by the Embassy, terminated a number of <u>non-Saudi Arabian</u>, <u>non-Sunni Muslim</u> employees." SAC ¶ 70 (emphasis added).

The caption on page 13 of the SAC also clearly asserts: "Plaintiffs were Selected for Termination Based on Their Race(s), National Origin(s), and Religion(s)". SAC at page 13.

Because national origin and religion were also factors alleged to have played a role in Plaintiffs' selection for layoff, Plaintiffs have failed to allege facts from which a reasonable fact finder could conclude that race was the "but-for" cause of their terminations. As the Supreme Court recognized in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), a plaintiff cannot succeed on a Section 1981 claim unless he "can prove that he was subjected to intentional discrimination based on [his race], rather than solely on the place or nation of his origin, or his religion". *Id*. at 613. *Cf. Berry v. Coastal Int'l Sec., Inc.*, 2016 WL 1060196, at *12 n.17 (D.D.C. 2016) (recognizing that the plaintiff could not prove "but for" causation under the Age Discrimination in Employment Act where he had admitted, in his deposition that "he was 'beginning to feel that it's much more to do with nationality than age'").

The fact that Plaintiffs Balduman (Caucasian, *see* SAC ¶ 19), Javaheri (Iranian, *see* SAC ¶ 23), and Schramm (Caucasian, *see* SAC ¶ 24), who were represented by counsel throughout the EEOC Charge process, did not check the "race" box on their EEOC Charges provides further evidence that race was not the "but for" cause of their terminations. *See* **Exhibit 5** (Balduman EEOC Charge); **Exhibit 19** (Javaheri EEOC Charge); and **Exhibit 23** (Schramm EEOC Charge). *See Moini v. LeBlanc*, __ F. Supp. 3d __, 2020 WL 1975786, at *11 (D.D.C. 2020) (McFadden, J.) (reasoning that "the failure to check the 'race' box on the EEOC form was [] one factor in the analysis" as to whether the plaintiff had sufficiently alleged a Section 1981 claim).

Although The Embassy recognizes that the Court, in *Moini v. LeBlanc,* held that the plaintiff, an Iranian who had only checked the "national origin" box in his EEOC Charge, had alleged sufficient facts to withstand a motion to dismiss with regard to his Section 1981 claim, that case is readily distinguishable.  First, unlike the Plaintiffs here, the plaintiff in *Moini* did not allege, in his EEOC Charge or lawsuit, that he had also been discriminated against based on his religion. *Id*. at *3 (Moini "alleged that the University had discriminated against him based on 'national origin'").

Second, the plaintiff in *Moini* "describe[d]  himself as 'Middle Eastern' – not just 'Iranian' – which suggest[ed] a focus on 'ancestry or ethnic characteristics,' rather than just country of origin" and focused on his different treatment from his Caucasian colleagues.  *Id*. at *11.  In contrast, here, Plaintiffs are comprised of various races (Plaintiffs Balduman and Schramm are Caucasian, Plaintiffs Adetoro, Gaujean-La Mar, Greer, Howell, and Wilkins are African American, and Plaintiff Javaheri is Iranian, *see* SAC ¶¶ 18-25), and the focus of the SAC is not on their race, but their non-Saudi Arabian national origin.  Indeed, the fact that Ms. Javaheri is Iranian, and thus of "Middle Eastern" race (like the unnamed comparators who allegedly treated more favorably) highlights the fact that race has not been alleged in the SAC to be the "but for" cause of Plaintiffs' terminations.  Rather, the non-Saudi Arabian national origin of the Plaintiffs (as well as their non-Sunni Muslim religion), is consistently alleged in the SAC as the basis of their discrimination claim.

Finally, unlike the plaintiff in *Moini*, who was *pro se* and entitled to "less stringent standards than formal pleadings drafted by lawyers", Plaintiffs have been represented by the same counsel throughout the EEOC Charge and litigation process and have amended their Complaint three times.  *Moini*, 2020 WL 1975786 at *3.

31

Ultimately, the SAC is more akin to the complaint in *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263 (D.D.C. 2011), where the court refused to "recognize Ndondji's attempt to blur race and national origin in order to make out a section 1981 claim." *Id*. at 273.  In *Ndondji*, the plaintiff alleged "that individuals who were 'not foreign nationals' did not receive the same treatment as 'foreign nationals'; that complaints by 'foreign nationals' were ignored by management; that InterPark supervisors made statements that 'illustrated their bias against foreign nationals'; that he was terminated because of his 'foreign nationality'; and that a 'non-foreign national ('American')' took his position." *Id*.  In dismissing the plaintiff's Section 1981 claim, the court reasoned, "Ndondji's occasional reference to his race in his amended complaint is [] insufficient to make out a section 1981 action." *Id*. at 274.  *See also Kornyo v. Gonzaga Coll. High Sch.*, 308 F. Supp. 3d 212, 216 ( D.D.C. 2018) (dismissing national origin claim asserted under Section 1981).

The same is true here. Plaintiffs repeatedly state that they were subjected to inferior treatment because they were non-Saudi Arabian and non-Muslim, not because of race.  *See* SAC ¶¶ 25, 41, 45, 46-48, 60, 68, 69, and 70.  Thus, the SAC should be dismissed with prejudice. *See Ekandem v. D.C.,* 1994 WL 721490, at *3 (D.D.C. 1994) (dismissing Section 1981 claim because, despite being granted the opportunity to amend his complaint, plaintiff's amended complaint did not contain "allegations of discrimination based upon 'ancestry or ethnic characteristics'" but instead contained allegations of "'birthplace alone'") (quoting *Saint Francis College*, 481 U.S. at 613-14).

## 2.    Plaintiffs Further Aver that KAA's Finances and Poor Performance Were Factors in Their Terminations.

Not only do Plaintiffs admit that their national origin and religion were factors in their terminations, they also acknowledge that poor performance and KAA's finances were factors in their terminations.  For example, Plaintiffs assert that Principal "Faisandier and Plaintiff Diane

Wilkins developed a list of KAA employees recommended for termination because of low performance."  SAC ¶ 43.  Plaintiffs also acknowledge that their "terminations were purportedly in response to financial issues which had arisen."  SAC ¶ 71.

As the Supreme Court in *Comcast Corp.* recognized, however, even if the SAC is read to assert that race was a "motivating factor" in Plaintiffs' terminations, the fact that other factors played a role in the adverse action renders race not the "but for" cause.  *Comcast Corp.*, 140 S. Ct. at 1019.  For example, in *Astre v. McQuaid*, 804 F. App'x 665 (9th Cir. 2020), the Ninth Circuit Court of Appeals held that the plaintiff could not make out "but for" causation under Section 1981 where she had alleged, in addition to race discrimination, that the impairments to her contract were also caused by a "lack of community support".  *Id.* at 667.  *C.f., Schuler v. PricewaterhouseCoopers, LLP*, 421 F. App'x 1, *2 (D.C. Cir. 2011) (holding that the plaintiff could not demonstrate age as the "but for" cause of his termination where poor performance also was a factor).

Because Plaintiffs have pled that factors other than race allegedly caused their terminations, race was not the "but for" cause of Plaintiffs' terminations, and Count II must be dismissed with prejudice.

## V.     CONCLUSION

In summary, Plaintiffs' claims against The Embassy suffer from a myriad of fatal flaws, including: (1) Plaintiffs have not pled that an exemption to the FSIA's immunity applies; (2) Plaintiffs' scant allegations fail to demonstrate that The Embassy was their joint employer for purposes of the DCHRA or Title VII; (3) as a foreign sovereign, The Embassy is not subject to the DCHRA; (4) Plaintiffs have not alleged any adverse actions occurring or being felt in the District of Columbia; (5) Plaintiffs' DCHRA claims were not timely filed; (6) Plaintiffs' Title VII claims

were not timely filed; (7) Plaintiffs Balduman, Javaheri, and Schramm failed to exhaust their administrative remedies with respect to race; (8) Section 1981 only applies to nongovernmental actions, not those of a foreign sovereign government; and (9) Plaintiffs' allegations demonstrate that race was not the "but for" cause of their terminations.  For these reasons, the SAC should be dismissed against The Embassy with prejudice.

In the event the Court does not dismiss all of Plaintiffs' claims against The Embassy, it should strike Plaintiffs' demand for a jury trial and punitive damages as to The Embassy because these are not permitted under the FSIA.  The Embassy respectfully requests a hearing on the instant Motion.

Dated: September 10, 2020                 Respectfully submitted,


                                          _____/s/ Lori H. Turner_____
                                          Edward Lee Isler, DC Bar No. 417076
                                          Lori H. Turner, DC Bar No. 495530
                                          ISLER DARE, P.C.
                                          1945 Old Gallows Road, Suite 650
                                          Vienna, Virginia 22182
                                          (703) 748-2690
                                          (703) 748-2695 (fax)
                                          eisler@islerdare.com
                                          lturner@islerdare.com

                                          *Counsel for Defendant*
                                          *The Embassy of the Kingdom of Saudi Arabia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of September 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

Phillis H. Rambsy, Esq.
Rambsy Law PC
315 Deaderick St., Suite 1550
Nashville, TN 37238
phillis@rambsylaw.com

Francisco Mundaca, Esq.
The Spiggle Law Firm, PC
4830 31st Street, South, Suite A
Arlington, VA 22206
fmundaca@spigglelaw.com
*Counsel for Plaintiffs*

Haig V. Kalbian, Esq.
Stephen C. Leckar, Esq.
Evan M. Lisull, Esq.
Kalbian Hagerty LLP
888 17th Street NW, Suite 1000
Washington, DC 20006
hkalbian@kalbianhagerty.com
sleckar@kalbianhagerty.com
elisull@kalbianhagerty.com
*Counsel for Defendant King Abdullah Academy*


         /s/ Lori H. Turner