# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOSIN ADETORO, ET AL., | ) |
| | ) |
| Plaintiff, | ) Case No. 19-cv-01918 |
| | ) |
| v. | ) |
| | ) |
| KING ABDULLAH ACADEMY, ET AL., | ) **ORAL ARGUMENT** |
| | ) **REQUESTED** |
| Defendants. | ) |
| | ) |

## DEFENDANT KING ABDULLAH ACADEMY'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Date: October 1, 2020

Respectfully submitted,

KALBIAN HAGERTY LLP

/s/ Haig V. Kalbian
Haig V. Kalbian (D.C. Bar # 400976)
Stephen Leckar (D.C. Bar # 281691)
888 17th Street, N.W., Suite 1000
The Brawner Building
Washington, D.C. 20006
hkalbian@kalbianhagerty.com
Phone: (202) 223-5600
Facsimile: (202) 223-6625
*Counsel for Defendant King Abdullah Academy*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .......................................................................................................ii

INTRODUCTION ...............................................................................................................1

    This Court's Rule12(b)(6) Jurisprudence ...........................................................2

    Reply Argument ..................................................................................................4

        I.   All the Plaintiffs' Title VII claims are untimely ..............................4

        II.  Plaintiffs still have failed to allege a joint employment relationship ...................8

        III. KAA adopts by reference the Embassy's reply to Plaintiffs' claim that their DCHRA claims are timely .........................................13

        IV. Plaintiffs' Opposition fails to address KAA's proof that the SAC Does not come close to establishing any plausible claim of invidious discrimination ...................................13

              a.  Plaintiffs' concessions are revealing ..............................13

              b.  Plaintiffs' failure to address some governing legal principles is revealing ........................15

              c.  The SAC's allegations and the Opposition remain lacking ..............18

        V. Plaintiff' Opposition also fails to address KAA's demonstration that they have not made a plausible claim under 42 U.S.C. § 1981 ...................22

CONCLUSION ...............................................................................................................24

**TABLE OF AUTHORITIES**

**CASES**                                                               **PAGE**

*Aka v. Washington Hosp. Ctr.,*
    156 F.3d 1284 (D.C. Cir. 1998)................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................18

*\*Ashraf-Hassan v. Embassy of France in U.S.,*
    878 F. Supp. 2d 164 (D.D.C. 2012)................................................................7

*Attakora v. District of Columbia,*
    943 F.Supp.2d 152 (D.D.C. 2013)................................................................17

*Battle v. Mnuchin,*
    2020 WL 4732084 (D.D.C. Aug. 14, 2020)................................................................24

*Beaulieu v. Barr,*
    2019 WL 5579968................................................................17, 18, 19

*Bethlehem Steel Corp. v. Tishman Realty & Construction Co.,*
    72 F.R.D. 33 (S.D.N.Y. 1976)................................................................1

*Bishop v. Dept. of Agriculture,*
    2020 WL 3064421 (D.D.C. June 9, 2019)................................................................3, 17, 8, 19

*Braxton v. First Transit,*
    322 F. Supp.3d 110 (D.D.C. 2018)................................................................2, 5

*Brady v. Office of Sergeant at Arms,*
    520 F.3d [490] [(D.C. Cir. 2008)]................................................................15

*Brett v. Brennan,*
    299 F.Supp.3d 63 (D.D.C. 2018)................................................................2

*\*Bundy v. Sessions,*
    387 F.Supp.3d 121 (D.D.C. 2019),
    *aff'd,* 812 Fed. App'x 1 (D.C. Cir. 2020)................................................................3, 4, 9, 10

*Burley v. Nat'l Passenger Rail Corp.,*
    801 F.3d 290, 301 (D.C. Cir. 2015)................................................................15

*Carter v. George Washington Univ.,*
    387 F.3d 872 (D.C. Cir.2004)................................................................7

*Cole v. Boeing Co.*,
        845 F. Supp. 2d 277 (D.D.C. 2012) ................................................................10

*Comcast Corp. v. Nat'l Assoc. of African-American Owned Media*,
        ___ U.S. ___, 140 S. Ct. 1009 (2020) ......................................................23, 24

*Crawford v. Barr*,
        2019 WL 6525652 (D.D.C. Dec. 4, 2019) .....................................................21

*Dieng v. American Institutes for Research, etc.*,
        412 F.Supp.3d 1 (D.C. 2019) ...........................................................................7

*Doe v. Lee*, 2020
        WL 759177 (D.D.C. Feb. 14, 2020) ..........................................................11, 12

*Easaw v. Newport*,
        253 F. Supp. 3d 22 (D.D.C. 2017) ..................................................................21

*Enterprise Rent-A-Car Wage and Hour Employment Practices Litig.*,
        683 F.3d 462 (3d Cir. 2012) ............................................................................12

*Fort Bend County v. Davis*,
        139 S.Ct. 1843 (2019) ...................................................................................5, 6

*George v. Molson Coors Beverage Co.*
        *USA, LLC*, 2020 WL 5702089 (D.D.C. Sept. 24, 2020) ...........2, 3, 4, 6, 17, 18, 19, 20, 21

*Golden v. Management and Training Corp.*,
        266 F.Supp.3d 277 (D.D.C. 2017) .............................................................11, 12

*Haynes v. Library of Congress*,
        2019 WL 589496 (D.D.C. Feb. 13, 2019) ......................................................3, 4

*JBC Holdings NY, LLC v. Pakter*,
        931 F.Supp.2d 514 (S.D.N.Y.2013) ................................................................19

*Kidane v. Northwest Airlines, Inc.*,
        41 F.Supp.2d 12 (D.D.C. 1999) ......................................................................22

*Johnson v. Local Lodge 1759*,
        2019 WL 2503909 (D.D.C. June 17, 2019) ............................................3, 15, 16

*Lovelein v. United States*,
        422 F.Supp.3d 341 (D.D.C. 2019) ....................................................................4

*McCleary-Evans v. Md. Dep't of Transportation*,
780 F.3d 582 (4th Cir. 2015)................................................................3, 20

*Miles v. Howard Univ.*,
83 F. Supp. 3d 105 (D.D.C. 2015)................................................................11

*Moini v. LeBlanc*, _ F.Supp.3d. _,
2020 WL1975786 (D.D.C. Apr. 24, 2020)................................................2, 15, 18

*Monteith v. AFSCME*,
982 A.2d 301 (D.C. 2009)................................................................10

*Muhammad v. WMATA*,
319 F.Supp.3d 440 (D.D.C. 2018)................................................................4, 8, 21

*Ndondji v. InterPark Inc.*,
768 F. Supp. 2d 263 (D.D.C. 2011)................................................................22

*Omene v. Accenture Financial Services*,
2019 WL 4750276 (D.D.C. Sept. 30, 2019),
*later op.*, 2020 WL 1189298 (D.D.C. Mar. 12, 2020)........................2, 3, 4, 5, 8, 21, 24

*Purgess v. Sharrock*,
33 F. 3d 134 (2nd Circuit 1994)................................................................24

*Rogers v. Smithsonian Institution*,
305 F.Supp.3d 89 (DD.C. 2018)................................................................2

*Schuler v. Price Waterhouse Coopers*,
514 F. 3d 1365 (D.C. Cir. 2008)................................................................8

*Simpkins v. WMATA*,
1997 WL 702349 (D.C. Cir. Oct. 10, 1997)................................................................7

*Sturdza v. United Arab Emirates*,
281 F.3d 1287 (D.C. Cir. 2002)................................................................8

*Townsend v. United States*,
236 F.Supp.3d 280 (D.D.C. 2017)................................3, 6, 15, 16, 17, 19, 20, 23

*Williams v. Perdue*,
2020 WL 1892046 (D.D.C. April 16, 2020)................................................................4

*Wilson v. DNC Systems Corp.*,
  315 F.Supp.3d 392 (D.D.C. 2018),
  *later op.,* 417 F.Supp.3d 86 (D.D.C. 2019) ........................................................... 3

*Xiaofeng v. Pompeo*,
  2019 WL 1697868 (D.D.C. Apr. 17, 2019) ........................................................... 18

*Zoubair v. United Arab Emirates*,
  48 F. App'x 336 (D.C. Cir. 2002) ........................................................... 8

**RULES**

LCvR 7(a) ........................................................... 4

F. R. Evid Rule 801(d)(2) ........................................................... 24

Fed. R. Civ. P. 12(b)(6) ........................................................... 2, 15

**STATUTES**

42 U.S.C. §1981 ........................................................... 2, 8, 18, 21, 22, 23, 24

29 C.F.R. § 1601.13(a)(2) ........................................................... 7

## Introduction

Plaintiffs' opposition brief is designed to obscure the fact that their Complaint's latest version cannot survive a motion to dismiss. In fact, there are several key points that Plaintiffs should have discerned from the oral argument held on King Abdullah Academy's ("KAA") Motion to Dismiss Plaintiffs' First Amended Complaint but failed to do so. High on that list would have been the need to reflect on concerns posed by the Court and then address them meaningfully in an amended pleading, if possible. And if presented with a motion to dismiss, it's usually a good idea to address the arguments made and the supporting legal analyses rather than leave them unaddressed or elide them with irrelevancies or bombast. Simply put, there is "no license . . . to throw words and papers at the record to create an aura of dispute and uncertainty and thereby dissuade a court from exercising its powers."[1]

These lessons escaped Plaintiffs' attention. The Second Amended Complaint's ("SAC") claim that KAA's discharges amidst a reduction in force were marred by invidious discrimination lack plausible allegations that the impacted positions weren't abolished or that someone outside the protected class assumed those positions' functions. The eight plaintiffs, five of whom were in KAA's uppermost hierarchy, do not deny the school's financial constraints. None claim to have experienced questionable behavior from school management—*they* were management—or been exposed to that by Embassy of Saudi Arabia ("Embassy") officials. Indeed, in seeking to depict the Embassy as an ever-looming presence, Plaintiffs don't even allege personal contact with it, much less respond to the Court's question about what facts could support their threadbare allegation that the Embassy controlled KAA.

---

[1] *Bethlehem Steel Corp. v. Tishman Realty & Construction Co.,* 72 F.R.D. 33, 39 (S.D.N.Y. 1976). Although *Bethlehem* was decided in the context of a summary judgment motion, KAA suggests that its import transposes to this case's current posture.

There is far more. The SAC still does not plausibly allege Embassy control and Plaintiffs' brief does not meaningfully resolve that deficit. Nor do Plaintiffs seriously address KAA and the Embassy's proof that the Title VII and DCHRA claims were untimely filed. Instead Plaintiffs also transparently dodge that issue. Plaintiffs further fail to address the defense claim that the DCHRA theory fails because it is predicated on the acts of a foreign sovereign, which is outside the statute's scope, and which in any event is not plausibly alleged as a joint employer.

One last preliminary peek: not only do Plaintiffs' charges still fail to state claims of discrimination, Plaintiffs have yet to address the Court's concerns about why they seemed fixated on Saudi students rather than employment practices. Nor have they done anything other than use verbal gymnastics to avoid answering the Court's question about whether their 42 U.S.C. § 1981 claim isn't really based on national origin rather than race. It quite clearly is.

## This Court's Rule 12(b)(6) Jurisprudence

This Court's decisions resolving motions to dismiss (or for judgment on the pleadings) in employment discrimination claims provide a framework to proving that Plaintiffs' Opposition fails to address the SAC's deficiencies. The takeaways perhaps most pertinent here are:

    (1) The complaint will be examined meticulously.[2]

    (2) The plaintiff must have timely exhausted all claims required to be presented to an administrative agency or justify their non-compliance.[3]

---

[2]   *See*, *e.g.*, *George v. Molson Coors Beverage Co. USA, LLC*, 2020 WL 5702089, *1-*5 (D.D.C. Sept. 24, 2020); *Moini v. LeBlanc*, _ F.Supp.3d. _, 2020 WL1975786, *12 D.D.C. Apr. 24, 2020); *Omene v. Accenture Financial Services*, 2019 WL 4750276, *2, *4 (D.D.C. Sept. 30, 2019) ("*Omene I*"); *Rogers v. Smithsonian Institution*, 305 F.Supp.3d 89, 92-93, 98 (DD.C. 2018); *Brett v. Brennan*, 299 F.Supp.3d 63, 72-73 (D.D.C. 2018).

[3]   *See*, *e.g.*, *Moini*, 2020 WL 1975786, at *4-*9; *Braxton v. First Transit*, 322 F. Supp.3d 110, 116-18 (D.D.C. 2018) (citing cases); *Omene I*, 2019 WL 4750276, at *3-*4, *later op.*, 2020 WL 1189298, *6 (D.D.C. Mar. 12, 2020) ("*Omene II*"); *Rogers*, 305 F.Supp.3d 95-96 (federal agency); *Brett*, 299 F.Supp.3d 70-71 (same).

(3) Unadorned "must have been" theories of discrimination will be rejected.[4]

(4) Absent allegations of direct evidence of discrimination the plaintiff must allege sufficient facts from which a plausible inference of discrimination could be drawn. The complaint must allege facts linking the claimed adverse action to the plaintiff's protected characteristics—a nexus, in other words.[5]

(5) Undue speculation will not pass muster[6] and allegations will be evaluated in a commonsense manner.[7] Merely alleging that your job was eliminated or that you were replaced by someone outside of the protected class "'does not alone support a *reasonable* inference that the decisionmakers were motivated by bias.'"[8] Gauzy allegations of "direction" will meet the same fate.[9]

(6) An alleged comparator should be identified and alleged to be similarly situated.[10]

---

[4] *See*, *e.g.*, *Bishop v. Dept. of Agriculture*, 2020 WL 3064421, *2 (D.D.C. June 9, 2019).

[5] *See*, *e.g.*, *George*, 2020 WL 5702089, at *3 (citing authority); *Bishop*, 2020 WL 3064421, at *2, *3 (citing cases).

[6] *See*, *e.g.*, *Omene II*, 2020 WL 1189298, at *3, *5. *See also Haynes v. Library of Congress*, 2019 WL 589496, *3 n.5 (D.D.C. Feb. 13, 2019).

[7] *See*, *e.g.*, *Omene II*, 2020 WL 1189298, at *4.

[8] *See*, *e.g.*, *George*, 2020 WL 5702089, at *3 (quoting *McCleary-Evans v. Md. Dep't of Transportation*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis original)). KAA cited as a key case—which Plaintiffs ignored—the underlying district court decision in *McCleary* that dismissed an employment action. KAA MTD Mem. at 30.

[9] *See*, *e.g.*, *Bundy v. Sessions*, 387 F.Supp.3d 121, 129 (D.D.C. 2019) (*Bivens*; 42 U.S.C. § 1983), *aff'd*, 812 Fed. App'x 1 (D.C. Cir. 2020).

[10] *See*, *e.g.*, *George*, 2020 WL 5702089, at *3-*4 ("'To prove that he is similarly situated to another employee, a plaintiff must … demonstrate that `all of the relevant aspects of his employment situation were nearly identical to those of the [other] employee.'") (cleaned up); *Wilson v. DNC Systems Corp.*, 315 F.Supp.3d 392, 400 (D.D.C. 2018), *later op.*, 417 F.Supp.3d 86 (D.D.C. 2019); *Johnson v. Local Lodge 1759*, 2019 WL 2503909. **3-*4 (D.D.C. June 17, 2019) (identifying alleged comparator and underlying similarities) (citing *Townsend v. United States*, 236 F.Supp.3d 280, 309 (D.D.C. 2017)).

(7) Where comments are alleged to evince discrimination there must be a temporal proximity and pertinence to the challenged adverse action.[11]

(8) An opposition to a motion to dismiss must fairly respond to the moving party's arguments or risk being deemed waived.[12] An opposition is not a vehicle to advance claims not made in the complaint.[13]

(9) The Court expects that amended or successive pleadings, when presented by counsel, will respond to its questions.[14]

(10) Absent *pro se* status, three appears to be the proverbial "magic number" of opportunities to set forth a claim of discrimination.[15]

Both the SAC and Plaintiffs' defense of it fail to adhere to the foregoing standards.

## Reply Argument

Before responding to Plaintiffs' Opposition, KAA would note that Plaintiffs did not address a single case designated by KAA as "chiefly relied upon," pursuant to LCvR 7(a). Instead Plaintiffs' Opposition embarks on misdirection that cannot efface the SAC's deficits.

### I. All the Plaintiffs' Title VII claims are untimely.

Plaintiffs do not challenge KAA's argument that of the six Plaintiffs who advanced Title VII claims (Plaintiffs Schramm and Greer did not), all but Ms. Howell first filed administrative

---

[11] *See*, *e.g.*, *Omene II*, 2020 WL 1189298, at *7; *Haynes*, 2019 WL 589496, at *3.

[12] *See*, *e.g.*, *George*, 2020 WL 5702089, at *7; *Omene II*, 2020 WL 1189298, at *4. *5; *Omene I*, 2019 WL 4750276, at *2-*3-*4 (citing cases). *Cf., Muhammad v. WMATA*, 319 F.Supp.3d 440, 443 (D.D.C. 2018) (summary judgment motion). As well, the opposition's argument must be "clear and developed." *Williams v. Perdue*, 2020 WL 1892046, *6 (D.D.C. April 16, 2020).

[13] *See*, *e.g.*, *Omene II*, 2020 WL 1189298, at *5 (citations omitted).

[14] *See*, *e.g.*, *Omene II*, 2020 WL 1189298, at *1; *Lovelein v. United States*, 422 F.Supp.3d 341, 346-47 (D.D.C. 2019) (copycat to *Bundy*) (42 U.S.C. § 1983).

[15] *Omene II*, 2020 WL 1189298, at *10.

charges with the EEOC in May of 2018. They do not deny that these filings were lodged over 300 days from when they were told they would be terminated (Balduman) or learned they had been terminated (Adetoro, Gaujean-La Mar, Javaheri and Wilkins).[16]

This Court has recognized that the 300-day line bars late-filed Title VII charges from being pursued in federal court, absent equitable tolling, a doctrine that Plaintiffs fail to assert. It so ruled in *Moini*—a decision KAA cited and which Plaintiffs conveniently overlooked—and other disputes.[17]

Instead of addressing KAA's argument and *Moini*, Plaintiffs raise a transparently convoluted response that the Supreme Court's decision in *Fort Bend County v. Davis*[18] somehow required them to file first with the DCOHR and that they thereafter could have filed with the EEOC up to the earlier of sixty days after the DCOHR proceedings ended or 300 days from filing with the DCOHR.[19] Their claim is nonsensical and at odds with the law.

Plaintiffs' reliance on *Ft. Bend* is misplaced. A reading of *Ft. Bend* confirms as much. That decision holds that Title VII's charge-filing requirement is a claims-processing rule, not a jurisdictional rule. It is, in other words, a prudential prerequisite to suit the defense can forfeit (as it did in Davis' case) by waiting too long to object that the plaintiff herself had tarried too long before going to the EEOC or an authorized state agency.[20]  That was not the case here: Defendants immediately challenged Plaintiff's administrative filings as untimely.

---

[16]  *Compare* KAA MTD Mem. at 9-10 (listing dates of Plaintiffs' filings with the EEOC).

[17]  KAA MTD Mem. at 10 (citing *Moini*, 2020 WL 1975786, at *4-*9). *See also Braxton*, 322 F.Supp.2d at 116-17; *Omene*, 2020 WL 1189298, at *6.

[18]  139 S.Ct. 1843 (2019).

[19]  Pltfs' MTD Opp. at 12-13.

[20]  139 S.Ct. at 1851

Nothing in *Ft. Bend* requires that the aggrieved employee first file with the state anti-discrimination agency. And nothing in it endorses Plaintiffs' luxuriant suggestions that in a work-sharing jurisdiction (D.C. being one) a claimant may even wait up to 600 days (300 to file with DCOHR + 300 to then go to EEOC) to tender administrative charges.[21]

Before turning back to Ms. Howell, a further point places the proverbial hammer in the coffin of her colleagues' defense of the Title VII claims' untimeliness. "Perplexingly [Plaintiffs] nowhere allege[] in [their] Complaint (or even in [their] opposition brief) when" they filed at DCOHR.[22] And although they proclaim that "'[i]n essence,, [*sic*] Plaintiffs timely filed their complaints with the DCOHR,'"[23] that is objectively incorrect. Their Opposition does not deny that they filed first with the EEOC after the 300 day limit and later went to DCOHR,[24] an inconvenient fact confirmed by [Docket # 17-5], which reveals that they approached DCOHR during the last week of July 2018, months after their filings before the EEOC. If Plaintiffs didn't file with EEOC until after 300 days had elapsed, then perforce they didn't concurrently file with DCOHR *before* then. Their Opposition "effectively pleaded [themselves] out of court by 'alleging facts that render success on the merits impossible.'"[25]

This leaves Ms. Howell's Title VII claim. KAA invoked a series of decisions issued by other judges in this District (and a Sixth Circuit opinion), recognizing that in jurisdictions with work-sharing agreements between the EEOC and state anti-discrimination agencies, a plaintiff

---

[21]  Pltfs' MTD Opp. at 13 ("Title VII instructs the complainant to file her charge first with the state or local agency.

[22]  *George*, 2020 WL 5702089, at *5.

[23]  Pltfs' MTD Opp. at 15.

[24]  Pltfs' MTD Opp. at 13 ("In this case the Plaintiffs did initially file their claims with the EEOC, and thereafter filed with the DCOHR.").

[25]  *Townsend*, 236 F.Supp.3d at 305 (citations omitted).

who files first with the EEOC is held to a 180-day line.[26] In addition, KAA observed that two panel decisions in the Circuit Court of Appeals have touched on this issue and reached differing conclusions, the more recent one appearing as *dictum*.[27]

Plaintiffs eschewed any discussion of the district court decisions proffered by KAA or of KAA's position that *Carter* doesn't definitively save Ms. Howell's Title VII claim, any more than it would have saved her cohorts had they first filed with the EEOC in a work-sharing state after the 300 days elapse. Nor did Plaintiffs address KAA's demonstration that the EEOC could not, under the guise of Regulation 29 C.F.R. § 1601.13(a)(2), promulgate what is in effect a substantive regulation which affects individual obligations under the guise of a procedural regulation extending the time to file a charge beyond 180 days for those who—like Plaintiffs— first filed with the EEOC.[28] Plaintiffs remain just as circumspect about the tension between clinging to their later separate DCOHR filings, which is inconsistent with their brandishing of the work-sharing agreement.[29]

Furthermore, Plaintiffs ignore the policy behind extending the 180-day deadline to 300 days for those who initially file administrative charges at the state level, *viz.,* "to prevent forfeiture of a complainant's federal rights while participating in state proceedings."[30] However,

---

[26]   KAA MTD Mem. at 10-11 (citing, *inter alia*, *Dieng v. American Institutes for Research, etc.,* 412 F.Supp.3d 1, 12. (D.C. 2019); *Ashraf*, 878 F.Supp.2d at 170-71).

[27]   KAA MTD Mem. at 11-12 (discussing *Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir.2004) and *Simpkins v. WMATA*, 1997 WL 702349 (D.C. Cir. Oct. 10, 1997)).

[28]   KAA MTD Mem. at 13-15.

[29]   *Compare* KAA MTD Mem. at 14 *with* Pltfs' MTD Opp. at 12-15.

[30]   *Ashraf*, 878 F.Supp.2d at 170-71 (quoted at KAA MTD Mem. at 12).

Plaintiffs first repaired to the EEOC. And their reliance on *Schuler v. Price Waterhouse Coopers*[31] is mystifying. *Schuler* does not address the consequences of filing first at the EEOC.[32]

Plaintiffs' position is *Omene redux*. They should be deemed to have conceded that their Title VII and DCHRA claims were untimely.[33]

## II.     Plaintiffs still have failed to allege a joint employment relationship.

Plaintiffs' failure (or unwillingness) to grapple meaningfully with KAA's contentions is further exemplified by their responses to its proof that the DCHRA and Section 1981 don't extend to foreign sovereigns. Moreover, the SAC and Opposition just duck the Court's questions about their threadbare allegation that the Embassy somehow directed the RIF at KAA.

*First*, Plaintiffs have not disputed that the DCHRA's definitions of liable "employers" does not include foreign sovereigns. Nor have Plaintiffs denied that federal courts have consistently rejected suits against foreign sovereigns under federal civil rights statutes and the DCHRA.[34]  If suit cannot be brought under those statutes against the Embassy, as Plaintiffs must be deemed to have conceded by their tacit recognition of the looming legal obstacles confronting them, then any derivative liability against KAA, which the SAC recognizes was created and based in Virginia and operated there, for any acts of the Embassy would fail.

---

[31]   514 F.3d 1365 (D.C. Cir. 2008) (cited at Pltfs' MTD Opp. at 14-15).

[32]   *See Schuler*, 514 F. 3d at 1372-77.

[33]   *Omene II*, 2020 WL 1189298, at *4. *5; *Muhammad v. WMATA*, 319 F.Supp.3d at 443.

[34]   *Compare* KAA MTD Mem. at 17-19 (citing, *inter alia*, *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002) ("Sturdza points to neither legislative history nor any other evidence suggesting that Congress intended section [42 U.S.C. §]1985 to cover foreign governments. Indeed, the Supreme Court has held that a foreign government is not a 'person' as that term is used in [42 U.S.C.] § 1983"), and *Zoubair v. United Arab Emirates*, 48 F. App'x 336, 337 (D.C. Cir. 2002) (DCHRA)) *with* Pltfs' MTD Opp. at 16 (silence).

*Second*, Plaintiffs haven't alleged any acts by the Embassy to set forth a plausible claim that the Embassy and KAA operated as a joint employer. The Court raised this very question at oral argument almost a year ago:

> THE COURT: Right. But I mean -- I thought what
> the defendants were pointing out was that your clients were
> actually pretty well positioned within the school to,
> presumably, be able to know whether the embassy was involved
> and, if so, how it was involved. And yet there is pretty
> scarce detail as to -- you know, I don't think you name
> anybody from the embassy who was involved. You don't say
> there was a phone call or that there is -- you know, under
> Iqbal threadbare assertions are not enough. Where do you go
> beyond threadbare assertions in saying that the embassy had
> anything to do with this?
>
> ***
>
> Under *Iqbal* and *Twombly* you have got to do more
> than just make allegations that have no substantiation;
> there's got to be some sort of detail.
> You are alleging that an embassy was involved in
> discriminating against teachers working in a different
> jurisdiction. What's your basis for saying that?[35]

In response counsel for Plaintiffs assured the Court that this could cured: "There are direct conversations from individuals at the embassy with the plaintiffs in this action."[36]

Yet the SAC makes the same bald allegation in Paragraph 70 that the Court questioned! Saying that "KAA, directed by the Embassy, terminated a number of non-Saudi Arabian, non-Saudi Arabian Muslims" (SAC, ¶ 70) is an allegation foreclosed in *Bundy*, where this Court dismissed a complaint and specifically criticized "Mr. Bundy's conclusory allegations that Directors Comey and Kornze engaged in some sort of conspiracy, 'directing' other officers to

---

[35]  Tr. Oct. 16, 2019 Oral Arg. at 27, 28 [#52-2].

[36]  *See id*. at 29 [#52-2].

violate Mr. Bundy's constitutional rights" as being unsupported by the facts alleged in the

Complaint.[37]

And if that were not enough, this exchange at oral argument is telling:

> THE COURT: So am I right in thinking that none of
> the former employees, your clients, worked in D.C. at the
> time they were employed by the academy?
> MR. MUNDACA: Your Honor, I believe that the
> actions itself occurred in D.C. with regard to --
> THE COURT: I'm sorry. You agree with me that
> none of them worked in D.C.?
> MR. MUNDACA: Yes. That's my understanding.
> THE COURT: So what are the actions then that
> occurred in D.C.?
> MR. MUNDACA: Well, the embassy is located in the
> District of Columbia. And it is our understanding that the
> directives that originated in the embassy and were funneled
> to KAA, were originated in D.C., thus giving the Court
> jurisdiction over this action. And the D.C. --
> THE COURT: What were the directives?
> MR. MUNDACA: Specifically -- generally speaking,
> that the Saudi students, the Saudi employees were to be
> treated differently than the non-Saudi employees and
> students. And there are various circumstances that, over
> the course of discovery -- that information would come to
> fruition.[38]

Notwithstanding opposing counsel's assurances that Plaintiffs had access to witnesses

who were privy to key communications with Embassy officials, the SAC *still* does not allege that

*any* decisions underlying the loss of their positions were made in D.C., much less identify any of

those phantom witnesses.[39]

---

[37]   *Bundy*, 387 F.Supp.3d at 130.

[38]   Tr. Oct. 16, 2019 Oral Arg. at 25-26 [#52-2].

[39]   *Compare* KAA MTD Mem. at 19 (citing *Monteith v. AFSCME*, 982 A.2d 301, 304-05 (D.C. 2009)) *with* Pltfs' MTD Opp. at 16 (silence). *See also Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 285 (D.D.C. 2012) (cited in KAA MTD Mem. at 19 as dismissing DCHRA claims where allegedly discriminatory acts occurred in Virginia and discriminatory effects were felt there and unmentioned by Plaintiffs).

Nor does the three-paragraph section of their opposition that is devoted to the issue of joint employment counter what KAA's motion stated about District of Columbia law governing the sufficiency of allegations of joint employer status. The law requires factually-supported allegations, not bare conclusions, that Entity A was so enmeshed in setting Entity B's <u>personnel policies and employment decisions</u> as to constitute a joint employer relationship.[40]

In response, Plaintiffs proffer the *Golden v. Management and Training Corp.* opinion advanced by KAA. Notably, Plaintiffs recognize that *Golden* dismissed a joint employer claim due to a "lack of allegation[] that the alleged joint employer could 'control and direct' both the details and results of plaintiff's work or that it controlled the 'terms and conditions' of his employment."[41] Yet Plaintiffs stubbornly refuse to recognize that the SAC is completely devoid of any allegation that the Embassy controlled or directed *their* work or the terms and conditions of *their* employment. Indeed, they shrink from the question that KAA posed: if the Embassy controlled KAA to the point that it was a joint employer "at all times relevant" to the SAC, why would Defendants permit five non-Saudis to serve on KAA's executive leadership team?[42]

That reticence confirms that *Golden* is no panacea for Plaintiffs' theory, especially when one considers the Plaintiffs' composition. They include KAA's former Deputy Executive Principal, Mr. Schramm; the Middle School Deputy Director ("similar to a Principal"), Ms. Howell; the Director of Learning Resources, Ms. Gaujean-La Mar; the school's Admissions

---

[40] *Compare* KAA MTD Mem. at 19-21 (citing *inter alia*, *Doe v. Lee*, 2020 WL 759177, *7 (D.D.C. Feb. 14, 2020) (under Title VII and DCHRA a joint employer must have "'retained for itself sufficient control of the terms and conditions' of plaintiff's employment") (dismissing complaint); *Miles v. Howard Univ.*, 83 F. Supp. 3d 105, 117 (D.D.C. 2015) (Defendant's quality control oversight "insufficient to establish that it was a joint employer"), *aff'd*, 653 F. App'x 3 (D.C. Cir. 2016); *Golden v. Management and Training Corp.*, 266 F.Supp.3d 277, 287-288 & n.9 (D.D.C. 2017) (dismissing theory)).

[41] Pltfs' MTD Opp. at 16 (quoting *Golden*, 266 F.Supp.3d [at 287-288 n.8]).

[42] KAA MTD Mem. at 32.

Director, Ms. Balduman, who reported "directly" to the Executive Principal; and its Human

Resources Manager, Ms. Wilkins.[43] These people worked at KAA's upper echelon for a year.

They have had three more years since then to investigate a joint employer theory but have come

up woefully short. Neither they nor their other three cohorts contend that the Embassy hired or

fired them, required them to adhere to or enforce its personnel rules, told them how to do their

jobs by it or sent them paychecks and tax forms on Embassy cachet. All that Plaintiffs conjured

is that the Embassy provided KAA some financial support arranged through an Embassy

official.[44] But in *Golden* the plaintiff gained no traction by alleging that one of the defendant

corporations had a human resources director at the site where he worked for the other firm.[45]

      Moreover, even if the Embassy's relationship with KAA were on the order of a parent-

subsidiary relationship—which the SAC by no mean claims and Plaintiffs' opposition avoids—

the Embassy's providing financial support to KAA (and even occasionally assisting Saudi

students) does not a joint employer make.[46] The key is whether both firms had direct control

over the employees.[47] No plausible allegations of that appear anywhere in the SAC.

---

[43]   SAC, ¶¶ 19 (Balduman), 20 (Gaujean-La Mar), 22 (Howell), 24 (Schramm), 25 (Wilkins).

[44]   SAC, ¶¶ 31-33. Notably, neither Plaintiff Schramm, KAA's former Deputy Executive Principal, nor the others have suggested what portion of KAA's budget supposedly was met by Embassy funds, as compared to tuition payments remitted by students' families.

[45]   *Golden*, 266 F.Supp.3d at 288 n.8.

[46]   *Compare* KAA MTD Mem. at 21 (citing *In re Enterprise Rent-A-Car Wage and Hour Employment Practices Litig.*, 683 F.3d 462 (3d Cir. 2012)).

[47]   *Enterprise Rent-A-Car Wage and Hour Employment Practices Litig.*, 683 F.3d at 467-68. *Doe v. Lee,* a recent decision in this District, rejected joint employment allegations, and discussed a test laid down in *Enterprise*, *viz.*, "'[1] the alleged employer's authority to hire and fire the relevant employees; [2] [its] authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; [3] [its] involvement in day-to-day employee supervision, including employee discipline; and [4] [its] actual control of employee records, such as payroll, insurance, or taxes.'" 2020 WL 759177, at *7-*8. Even under that standard the SAC falls far short of establishing a plausible claim for joint employer status.

### III. KAA adopts by reference the Embassy's reply to Plaintiffs' claim that their DCHRA claims are timely.

The Embassy's Motion to Dismiss painstakingly traced the dates of the eight Plaintiffs' respective EEOC and DCOHR filings, something that was necessary because the Plaintiffs failed to do so. The Embassy established that even with the benefit of all applicable tolling rules, Plaintiffs' local-law claims were not filed within the one-year period required under the DCHRA.[48] To conserve judicial resources, KAA adopted that argument by reference.[49]

Having examined Plaintiffs' Opposition, which fails to counter the governing law—the facts being incontrovertible—KAA will again opt for efficiency and choose to incorporate by reference the Embassy's position to be expressed in its reply.

### IV. Plaintiffs' Opposition fails to address KAA's proof that the SAC does not come close to establishing any plausible claim of invidious discrimination.

Plaintiffs fare no better on the purported merits of the SAC's allegations. Before discussing the relevant legal principles that Plaintiffs have continued not to recognize (if not avoided), it may be helpful to reprise what their Opposition sought to accomplish and its actual revelations.

#### a. Plaintiffs' concessions are revealing.

The first eleven pages of Plaintiffs' Opposition is a reformatting of their SAC, capped with a proclamation that they've pleaded a case of employment discrimination. There is, of course, a tension between them: some see their terminations amidst the RIF as activated by race; others see it as driven by religion; others insist it must have been national origin; others suggest it surely was a combination of any or all of the above. To show that the SAC remains palpably insufficient, KAA first will point to what the Opposition fails to overcome.

---

[48] *See* Embassy MTD Mem. at 18-21 (detailing dates of filings and calculating time elapsed).

[49] KAA MTD Mem. at 21.

- Neither the SAC nor Opposition claim that KAA's stated claim of financial constraints that necessitated an overall staff downsizing was inaccurate.

- Neither the SAC nor Opposition deny that KAA hired these Plaintiffs, who are about as diverse a group as can be imagined, something at odds with the notion of KAA being a monolith of Saudi-oriented practices.

- Neither the SAC nor Opposition states that any KAA (or Embassy) official ever made open or suggestive comments to any Plaintiff or in their presence, much less at a point temporally proximate to the July 2017 RIF.

- Neither the SAC nor Opposition allege that seven of the eight Plaintiffs' positions were not, in fact, abolished.[50]

- Five of the Plaintiffs do not allege in the SAC or maintain in their Opposition that their duties were given to someone outside of the protected class(es) to which they purportedly belong or profess adherence.[51]

- The allegations of those three Plaintiffs who try to allege a purported replacement or a comparator who was retained are demonstrably conclusory and fail to establish a plausible basis for any form of discrimination, as discussed below.[52]

The SAC's efforts to present the RIF, said to have "affect all staff," as disproportionately affecting the "non-Sunni Muslims who were not of Arabic Middle Eastern descent"—whatever that means—is devoid of numbers.[53]

---

[50] SAC, ¶¶ 18 (Adetoro), 19 (Balduman), 20 (Gaujean-La Mar), 21 (Greer), 22 (Howell), 23 (Javaheri), 24 (Schramm).

[51] *See* SAC, ¶¶ 18 (Adetoro), 19 (Balduman), 22 (Howell), 23 (Javaheri), 24 (Schramm).

[52] SAC, ¶¶ 20 (Gaujean-La Mar), 21 (Greer), 25 (Wilkins).

[53] SAC, ¶¶ 73-76.

**b. Plaintiffs' failure to address some governing legal principles is revealing.**

So much for the moment about Plaintiffs' material factual allegations (or their absence) about themselves. KAA's motion discussed the significance of alleging comparator evidence in a discrimination claim to provide a court with sufficient facts to yield the plausible conclusion that an adverse action was motivated by discrimination.[54] KAA also emphasized that a plaintiff lacking comparators at least had to present other facts sufficient to lead to the same conclusion.[55]

Plaintiffs' Opposition, as would be expected, touts the SAC as sufficiently plausible to entitle them to unlock the doors to discovery. Several opinions in this District, including three authored by this Court, help explain why the SAC's scattershot allegations are wanting.

Chronologically arranged, the first is *Townsend v. United States*, an opinion cited by this Court in deciding a 12(b)(6) motion.[56] Finding insufficient the plaintiff's several theories of why he must have been discriminatorily discharged, *Townsend* stated that as a general proposition:

> "A plaintiff can establish pretext masking a discriminatory motive by presenting evidence suggesting that the employer treated other employees of a different [protected class] more favorably in the same factual circumstances." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015); *see also Brady v. Office of Sergeant at Arms*, 520 F.3d [490] at 495 [(D.C. Cir. 2008)] ("Probably the most commonly employed method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment."). To raise an inference of discrimination based on comparator evidence, the plaintiff must demonstrate: (1) that 'all of the relevant aspects of [his] employment situation were nearly identical to those of the [other] employee"; and (2) that the comparator was "charged with offenses of comparable seriousness" but treated more favorably. *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d at 301. "Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Burley*, 801 F.3d at 301.[57]

---

[54] KAA MTD Mem. at 23-27.

[55] *See id*. at 27-34.

[56] *See Johnson*, 2019 WL 2503909.at *4 (citing *Townsend*, 236 F.Supp.3d at 309).

[57] *Townsend*, 236 F.Supp.3d at 307 (cleaned up).

In rejecting the plaintiff's theory that his termination was due to his age, the court found that the complaint lacked facts giving rise to plausible inferences (1) that plaintiff and the purported comparator were significantly different in age; (2) that the plaintiff was treated less favorably than the younger woman for reason of his age; or (3) that they were charged with offenses of "comparable seriousness."[58]

The plaintiff's alternative charges of sex and race discrimination fared no better. The former foundered because the alleged female comparator was "simply not a plausible comparator;" her position was quite different than that encumbered by the plaintiff and their "employment situations were plainly not even close to 'nearly identical.'"[59] And his race-based discharge claim failed for similar reasons. First, "the plaintiff provide[d] no obvious comparator of another race who was treated more favorably."[60] The plaintiff's contention that less-qualified African-Americans were retained reached a similar early end. "Aside from some conclusory assertions, the plaintiff has not pleaded sufficient facts from which to draw a plausible inference that these individuals were less qualified;" given the complaint's allegations, "no plausible inference can be drawn that he was terminated because of his race from the mere fact that his replacements were African-American."[61]

In *Johnson v. Local Lodge 1759,* a Hispanic-American plaintiff charged that a Black supervisor had terminated him for an offense also committed by the plaintiff's African-American

---

[58]    *Townsend*, 236 F.Supp.3d at 308.

[59]    *Id.*, 236 F.Supp.3d at 310 (citation omitted).

[60]    *Id.*, 236 F.Supp.3d at 310.

[61]    *Id.*, 236 F.Supp.3d at 310-311.

partner who was nearby but wasn't disciplined. This Court quoted from *Townsend* and found that the "cobbled-together facts" … just carry his discrimination claims past dismissal."[62]

Next, much of the complaint in *Bealieu v. Barr*[63] was dismissed, save for a Title VII retaliation count. Invoking *Townsend*, the court observed that it otherwise was "left with no allegations—save for the bare assertion that Beaulieu was the only Hispanic female assigned to her unit—that allow the Court to infer that Defendants were motivated by discrimination based on Beaulieu's national origin or gender when demoting her and reducing her pay. She does not, for example, identify any 'comparator' employees who were treated differently."[64] "Nor does she 'identif[y] specific statements purportedly made' by a supervisor 'reflecting an animus against individuals of' her protected class."[65]

Three months ago, this Court upheld a defense motion for judgment on the pleadings in *Bishop v. Dep't of Agriculture*, *supra.* Although "an employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case to survive a motion to dismiss," the plaintiff must nonetheless "allege facts that if accepted as true would make the discrimination claims plausible."[66] The plaintiff's "must be" theories of race and sex discrimination were dismissed and *Bealieu* found persuasive precedent because the plaintiff had

---

[62] *See*, *e.g.*, *George v. Molson Coors Beverage Co. USA, LLC*, 2020 WL 5702089, *3 (D.D.C. Sept. 24, 2020) (citing authority); *Bishop*, 2020 WL 3064421, at *2, *3 (citing cases).

[63] 2019 WL 5579968 (D.D.C. Oct. 29, 2019).

[64] 2019 WL 5579968, at *4 (citing *Townsend*, 236 F.Supp.3d at 307).

[65] *Beaulieu,* 2019 WL 5579968, at *4 (quoting *Attakora v. District of Columbia*, 943 F.Supp.2d 152, 157 (D.D.C. 2013) (dismissing complaint in part)).

[66] *Bishop*, 2020 WL 3064421, at *2 (citations omitted).

essentially "only [] allege[d], in conclusory fashion, that he is a member of a protected class who suffered an adverse employment action because of his race."[67]

A week ago, the Court dismissed certain claims levied by an African-American former employee in *George v. Molson Coors Beverage Co.* Simply being replaced by a Caucasian employee did not establish a plausible claim of race discrimination.[68] Further, the plaintiff's alleged comparators "had different jobs in different companies" and the plaintiff hadn't alleged that "'all of the relevant aspects of his employment situation were nearly identical to those of the other employee[s]."[69] And the Court pointed out that the plaintiff's claim to having been one of only two Blacks at his level was meaningless in the absence of a fact-based context. "If, for example, there were three total, then African-American employees were in the majority," and therefore the allegation "is not even 'consistent with' discrimination, much less does it support a plausible inference of racial bias."[70]

### c. The SAC's allegations and the Opposition remain lacking.

Because Plaintiffs' DCHRA, Title VII and Section 1981 claims are governed by the same general principles (causation in a § 1981 claim being distinctively otherwise, as will be revisited below),[71] KAA will focus on what the Opposition fails to refute.

---

[67] *Bishop,* 2020 WL 3064421, at *3 (citing *Beaulieu,* 2019 WL 5579968, at *4, and *Xiaofeng v. Pompeo*, 2019 WL 1697868, *11 (D.D.C. Apr. 17, 2019) (national origin discrimination claim)).

[68] *George,* 2020 WL 5702089, at *3 (citation omitted).

[69] *See id.*

[70] *Id.*, 2020 WL 5702089, at *4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[71] *Moini*, 2020 WL 1975786, at *8, *9.

No Plaintiff claims to have witnessed racially, religious or ethnic comments made by any KAA (or Embassy) official.[72] Of the eight plaintiffs, only Ms. Wilkins alleges that her position wasn't abolished. Plaintiffs Adetoro, Balduman, Howell, Javaheri and Schramm do not even allege in the SAC that following the RIF, their duties were given to someone outside of their protected class(es). Their failure to do so is fatal. It should foreclose their factually impoverished theory that they must have lost their jobs because of some nebulous form of invidious conduct [73]

Likewise, the allegations of Ms. Gaujean-La Mar, Greer and Wilkins, who attempt to assert that a purported replacement or a comparator was retained, fail to do more than allege the ostensible replacement's race, ethnicity or religion (whatever seems conveniently tailored to fit these plaintiffs' claims), but make no effort to provide further facts sufficient to set forth a plausible discrimination claim. For instance, Ms. Gaujean-La Mar (SAC, ¶ 20) alleges that she is a Haitian/African-American Catholic who lost her position as a "Senior Coordinator of Instructional Technology" whereas a white male (of unspecified religion) was retained as an "Instructional Technology Coordinator," facially a different position and therefore not a comparator.[74] Ms. Wilkins (SAC, ¶ 25) claims to be an "African-American Christian" who was replaced by a woman who on unparticularized "information and belief" is a Saudi Muslim.[75] Ms. Wilkins just leaves it there, however, offering no reason to believe her alleged replacement

---

[72] *Beaulieu,* 2019 WL 5579968, at *4.

[73] *See, e.g*., *George,* 2020 WL 5702089, at *3; *Bishop*, 2019 WL3064421, at *3; *Beaulieu,* 2019 WL 5579968, at *4; *Townsend*, 236 F. Supp. 3d at 307.

[74] *See, e.g*., *George,* 2020 WL 5702089, at *3; *Townsend*, 236 F. Supp. 3d at 310.

[75] *JBC Holdings NY, LLC v. Pakter*, 931 F.Supp.2d 514, 527 (S.D.N.Y.2013) ("[A]lthough a plaintiff may do so [plead facts upon information and belief] where the facts are peculiarly within the possession and control of the defendant . . . such allegations must be accompanied by a statement of the facts upon which the belief is founded.") (citations omitted). No such statement is made by Ms. Wilkins.

was less qualified.[76] "This sort of allegation may be '*consistent* with discrimination,' but 'it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias.'"[77]

Ms. Greer, allegedly an African-American, attempts to contest the loss of her administrative assistant's position in KAA's Admissions Office with the retention of a woman stated on naked "information and belief" to a Saudi Muslim (SAC, ¶¶ 19, 21). Ms. Greer comes up short in two respects. This was a reduction in force situation driven by fiscal issues. Yet Greer fails to allege that the supposed comparator was earning as much or more than she was. That is basic information that Greer's co-plaintiff Ms. Wilkins, who claims to have overseen KAA's payroll (SAC, ¶ 25) would have known. Nor has Ms. Greer alleged that the other woman assumed Greer's duties or even continued in the same department after KAA's retrenchment.

Moving past the individual plaintiffs' stories, Plaintiffs' Opposition does not purport to cure the SAC's unadorned claim that the RIF disproportionately affected the so-called "non-Sunni Muslims who were not of Arabic Middle Eastern descent"—a puzzling description, to say the least—and meaningless as a plausible gauge of discrimination.[78] Likewise, Plaintiffs' allegation that a school official once speculated with a non-plaintiff, Shiree Slade, that an African-American could not aspire to become KAA's principal, doesn't get them anywhere. Plaintiffs have neither linked this comment about a promotion with anyone said to have made the RIF decisions at issue here nor contended that it was made at any time proximate to the events at

---

[76] *Townsend*, 217 F.Supp.3d at 310-11(citing and quoting *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1294 (D.C. Cir. 1998)).

[77] *George,* 2020 WL 5702089, at *3 (emphasis original) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015)).

[78] *George,* 2020 WL 5702089, at *4.

issue. As such, this isolated comment involving third parties has no pertinence to assessing whether the SAC states a claim.[79]

Before laying the § 1981 claim to rest, KAA is constrained to observe yet another instance of the Plaintiffs' *Omene*-like unwillingness to answer another question raised by the Court at oral argument and argued in KAA's motion. This relates to how they expected to tie in the SAC's allegations attributing inappropriate comments made by students to invidious discrimination by KAA and the Embassy.[80]

The fact of the matter is that Plaintiffs did not and cannot do it. KAA's moving papers referred to decisions rejecting similar unrelated comments as a basis for levying charges contesting Plaintiffs' termination.[81] Unsurprisingly, Plaintiffs' Opposition simply repeated the same allegations *verbatim*. Plaintiffs made no effort to explain these statements' conceivable relevance to their employment or even made even a flaccid effort to answer the Court.[82] Plaintiffs' reluctance to respond to these issues is passing strange when one recognizes that they quote (where they deem it convenient) from the oral argument transcript.[83] In any event, there is a remedy for their avoidance: deem the point conceded.[84]

---

[79] *Omene II,* 2020 WL 1189298, at *7-*8; *Crawford v. Barr*, 2019 WL 6525652, *3 (D.D.C. Dec. 4, 2019) (also granting motion to dismiss).

[80] *See* KAA MTD Mem. at 31 ((citing Oct. 16, 2019 Oral Agr. Tr. at 27, 33, 38).

[81] KAA MTD Mem. at 31-32 (citing, *inter alia*, *Easaw v. Newport*, 253 F.Supp.3d 22, 31-32 (D.D.C.2017); *Crawford*, 2019 WL 6525652, at *3).

[82] *See* Pltfs' MTD Opp. at 7, 8, 9 (repeating numerous allegations about Saudi students).

[83] *See id*. at 19.

[84] *George,* 2020 WL 5702089, at *7; *Omene II*, 2020 WL 1189298, at *4. *5; *Muhammad v. WMATA*, 319 F.Supp.3d at 443.

### V. Plaintiffs' Opposition also fails to address KAA's demonstration that they have not made a plausible claim under 42 U.S.C. § 1981.

KAA also has argued that the Section 1981 claim is a thinly-contrived and improper national origin case—something foreclosed as a basis for Section 1981 liability, as a case cited by KAA held—which Plaintiffs ignored.[85] Among other things, KAA pointed to the SAC's repetitive allegations that this is a case centering on purported discrimination against "non-Saudi Arabian, non-Saudi Arabian Muslims" and to concessions of Plaintiffs' counsel.[86]

The common core here is painfully obvious: it's Saudi Arabians. Any doubt of that comes from their statements made at oral argument the last time around, which the SAC does not cure:

- "Specifically -- generally speaking, [the as-yet unstated "directives" purportedly issued to KAA by still-unnamed Embassy officials were] that the Saudi students, the Saudi employees were to be treated differently than the non-Saudi employees and students."[87]

- "Their testimony [of persons whom Plaintiffs' counsel could not identify and aren't mentioned in the DAC] is direct evidence that they actually received to either treat students differently or that staff members, other employees at the school, KAA, were -- that led them to believe that the Saudi nationals were going to be treated differently than the non-Saudis –"[88]

---

[85] *Compare* KAA MTD Mem. at 34 (citing, *inter alia*, *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 273 (D.D.C. 2011)) *with* Pltfs' MTD Opp. at 18-19). Plaintiffs concede that Section 1981 doesn't extend to national origin theories. Pltfs' MTD Opp. at 18 (citing *Kidane v. Northwest Airlines, Inc.*, 41 F.Supp.2d 12, 15-16 (D.D.C. 1999)).

[86] KAA MTD Mem. at 33-37.

[87] Tr. Oct. 16, 2019 Oral Arg. at 25-26 [#52-2].

[88] *See id.* at 26 [#52-2]. (Note also that no one has "testified" here.)

- "Here, in this case, there are various claims being made that non-Saudis were treated differently."[89]

- "As Your Honor mentioned before, there is certainly gray areas when we're discussing race and national origin here. And realizing that throughout our complaint we mentioned 'Middle Eastern Arab'; however, the overlying umbrella is national origin."[90]

Plaintiffs' Opposition somehow manages with a straight face to deny that this is a national origin claim masquerading as a race case. The transcript reference they offer to the oral argument is unilluminating. In effect, the excerpt simply asserts that the Section 1981 claim is a race claim—of course, except that it is neither pleaded as such and a commonsense understanding of how counsel for Plaintiff described their case undermines their position here.[91]

Furthermore, KAA contended that under the Supreme Court's very recent *Comcast* decision that Plaintiffs cannot plausibly establish the requisite "but-for" causation necessary to pursue a Section 1981 claim.[92] To borrow from the ADEA cases, which have a similar high burden of proof, their threadbare allegations cannot establish causation, given the presence of the mass RIF; their acknowledging an alternative reason for their termination as "purportedly in response to financial issues which had arisen" and their position at oral argument that they believe that Defendants discriminated on the basis of *national origin*—specifically, Saudi origin. This concession is fatal to their § 1981 claims.[93] If anything, Plaintiffs' allegations are not even

---

[89]   Tr. Oct. 16, 2019 Oral Arg. at 28 [#52-2].

[90]   *See id.* at 34 [#52-2].

[91]   *See* Pltfs' MTD Opp. at 19 (citing Tr. Oct. 16, 2019 Oral Arg. at 35 [#52-2]).

[92]   KAA MTD Mem. at 38-39 (citing *Comcast Corp. v. Nat'l Assoc. of African-American Owned Media*, ___ U.S. ___, 140 S. Ct. 1009 (2020)).

[93]   *See Townsend*, 236 F.Supp.3d at 307 (dismissing ADEA claim).

"consistent with discrimination," much less demonstrative of a plausible inference of but-for purposeful racial bias.

Further proof of that implicit concession comes from the Opposition. It fails to address *Comcast* and eschews any mention of but-for causation.[94] So the Court also should deem this argument conceded.

Before leaving § 1981, KAA offers a closing observation about the unbridgeable ditch Plaintiffs have dug for themselves. Considering the admissions of counsel for Plaintiffs at oral argument that this is a Saudi vs. Non-Saudi case, it is quite hard to see a jury or the Court (the Embassy being immune from jury trials) seeing the Section 1981 claim as meeting the Comcast's but-for causation standard.[95]

## Conclusion

It is time to end Plaintiffs' effort to make the Court become a "super-personnel department."[96] Plaintiffs have had three failed efforts to plead a case. They have had ample notice and the SAC should be dismissed, with prejudice, in its entirety.[97]

Date: October 1, 2020

Respectfully submitted,

KALBIAN HAGERTY LLP

/s/ Haig V. Kalbian
Haig V. Kalbian (D.C. Bar # 400976)
Stephen Leckar (D.C. Bar # 281691)
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
hkalbian@kalbianhagerty.com
Phone: (202) 223-5600/ Facsimile: (202) 223-6625
*Counsel for Defendant King Abdullah Academy*

---

[94] *See* Pltfs' MTD Opp. at 18-19 (failing to address but-for causation).

[95] *Purgess v. Sharrock*, 33 F. 3d 134, 143-44 (2nd Circuit 1994) ("Counsel's statement of fact constituted an admission of a party."); Rule 801(d)(2), F. R. Evid.

[96] *Battle v. Mnuchin*, 2020 WL 4732084, * 4 (D.D.C. Aug. 14, 2020).

[97] *Omene II,* 2020 WL 1189298, at *10.

**Certificate of Service**

On the 1st day of October 2020, I have electronically filed the foregoing with CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Edward Lee Isler, Esq.
Lori H. Turner, Esq.
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
eisler@islerdare.com
lturner@islerdare.com
*Attorneys for Defendant*
*The Embassy of the Kingdom of Saudi Arabia*

Phyllis Rambsy, Esq.
The Spiggle Law Firm, PC
4830 A 31st Street, South
Arlington, Virginia 22206
prrambsy@spigglelaw.com
*Counsel for Plaintiffs*

/s/ Haig V. Kalbian
Haig V. Kalbian