# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TOSIN ADETORO**, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| **v.** | )     **Case No. 1:19-cv-01918-TNM** |
| | ) |
| **KING ABDULLAH ACADEMY** *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## REPLY BRIEF OF
## DEFENDANT, THE EMBASSY OF THE KINGDOM OF SAUDI ARABIA,
## <u>IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE</u>

(Below at right)

Edward Lee Isler, DC Bar No. 417076
Lori H. Turner, DC Bar No. 495530
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com

*Counsel for Defendant*
*The Embassy of the Kingdom of Saudi Arabia*

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ............................................................................................... 1

II. ARGUMENT ..................................................................................................... 1

    A.    Plaintiffs Have Conceded that Their Demand for a Jury Trial and for Punitive Damages Must be Stricken .................................................................................. 1

    B.    Plaintiffs Failed to Allege an Exception to the FSIA's Sovereign Immunity......... 2

    C.    The Embassy Was Not Plaintiffs' Joint Employer ................................................ 8

    D.    Sovereign Immunity Bars Plaintiffs' D.C. Human Rights Act Claims. ................. 9

    E.    Plaintiffs Fail to Allege Any Adverse Acts Occurring or Being Felt in D.C. ...... 10

    F.    Plaintiffs' Did Not Timely File Their DCHRA Claims within 1 Year of Discovery of the Alleged Unlawful Acts ............................................................. 11

    G.    Plaintiffs' Title VII Claims Are Time-Barred Because They Did Not File Their Charges Within 300 Days of the Alleged Unlawful Acts .......................... 13

    H.    Plaintiffs' Title VII Claims Are Time-Barred Because They Did Not File Suit Within 90 Days of Receipt of the EEOC's Right-to-Sue Notice ................. 14

    I.    Plaintiffs' Balduman, Javaheri, and Schramm Failed to Exhaust Their Administrative Remedies as to Race .................................................................... 15

    J.    Section 1981 of the Civil Rights Act of 1866 Does Not Apply to Foreign Sovereign Governments ...................................................................................... 17

    K.    Plaintiffs Fail to Allege that Race Was the "But For" Cause of Their Termination. ......................................................................................................... 18

    L.    Plaintiffs Fail to Address the Fact that the SAC Itself Demonstrates that KAA's Finances and Their Own Poor Performance Were Causes of Their Terminations. ....................................................................................................... 19

III.    CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
   734 F.3d 1175 (D.C. Cir. 2013)...................................................................2-3

*Braxton v. First Transit*,
   322 F. Supp. 3d 110 (D.D.C. 2018) ................................................................ 14

*Brown v. U.S.*,
   2004 WL 344411 (D.C. Cir. 2004)................................................................. 17

*Bundy v. Sessions*,
   387 F. Supp. 3d 121 (D.D.C. 2019), *aff'd*, 812 F. App'x 1 (D.C. Cir. 2020).................... 9

*Butters v. Vance Int'l, Inc.*,
   225 F.3d 462 (4th Cir. 2000) ........................................................................ 6

*Carter v. Carson*,
   241 F. Supp. 3d 191 (D.D.C. 2017), *aff'd*, 715 F. App'x 16 (D.C. Cir. 2018)................. 3

*\*Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*,
   140 S. Ct. 1009 (2020) ................................................................................ 19

*Conn v. Am. Nat'l Red Cross*,
   149 F. Supp. 3d 136 (D.D.C. 2016) ................................................................ 11

*Crum v. Kingdom of Saudi Arabia*,
   2005 WL 3752271 (E.D. Va. 2005).................................................................. 6

*Davis v. Transp. Sec. Admin.*,
   264 F. Supp. 3d 6 (D.D.C. 2017) .................................................................... 2

*\*Dougherty v. Barry*,
   869 F.2d 605 (D.C. Cir. 1989)...................................................................... 14

*DRC, Inc. v. Republic of Honduras*,
   71 F. Supp. 3d 201 (D.D.C. 2014) ............................................................. 6, 8

*El-Hadad v. United Arab Emirates*,
   496 F.3d 658 (D.C. Cir. 2007)....................................................................... 3

*First Nat'l City Bank v. Banco Para El Comercio*,
   462 U.S. 611 (1983).................................................................................. 10

*Golden v. Management & Training Corp.*,
266 F. Supp. 3d 277 (D.D.C. 2017) ............................................................. 8, 9

*\*Gulley v. District of Columbia*,
2020 WL 4001471 (D.D.C. 2020) ......................................................13-14, 15

*Hammel v. Marsh USA Inc.*,
79 F. Supp. 3d 234 (D.D.C. 2015) ................................................................. 11

*Harmouche v. Consulate Gen. of State of Qatar*,
313 F. Supp. 3d 815 (S.D. Tex. 2018) ............................................................ 4

*Harris v. Bowser*,
404 F. Supp. 3d 190 (D.D.C. 2019) .............................................................. 10

*\*Heroth v. Kingdom of Saudi Arabia*,
565 F. Supp. 2d 59 (D.D.C. 2008), *aff'd*, 331 F. App'x 1 (D.C. Cir. 2009)...................... 4

*Machado Amadis v. Dep't of Justice*,
388 F. Supp. 3d 1 (D.D.C. 2019) .................................................................. 2

*\*McKesson Corp. v. Islamic Republic of Iran*,
672 F.3d 1066 (D.C. Cir. 2012) ...........................................................9-10, 17

*Merlini v. Canada*,
926 F.3d 21 (1st Cir. 2019) ........................................................................... 3

*Middlebrooks v. Godwin Corp.*,
722 F. Supp. 2d 82, (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011).................. 3

*Monteilh v. AFSCME*,
982 A.3d 301 (D.C. 2009) ........................................................................... 11

*Muth v. Cobro Corp.*,
895 F. Supp. 254 (E.D. Mo. 1995) ............................................................... 14

*\*Ndondji v. InterPark Inc.*,
768 F. Supp. 2d 263 (D.D.C. 2011) ........................................................... 18-19

*\*Omene v. Accenture Fed. Servs.*,
2020 WL 1189298 (D.D.C. 2020) ..................................................... 13, 16, 19

*Osuoha v. District of Columbia Gov't*,
2003 WL 21466905 (D.C. Cir. 2003) ......................................................... 15-16

*Park v. Howard Univ.*,
    71 F.3d 904 (D.C. Cir. 1995) ................................................................ 16

*Phrasavang v. Deutsche Bank*,
    656 F. Supp. 2d 196 (D.D.C. 2009) ........................................................ 2

*Redd v. Summers*,
    232 F.3d 933 (D.C. Cir. 2000) ................................................................ 8

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ................................................................................ 2

*Robo-Team NA, Inc. v. Endeavor Robotics*,
    313 F. Supp. 3d 19 (D.D.C. 2018) .......................................................... 4

*\*Rogers v. Smithsonian Instit.*,
    305 F. Supp. 3d 89 (D.D.C. 2018) .......................................................... 16

*Rubert v. King*,
    2020 WL 5751513 (S.D.N.Y. 2020) ........................................................ 19

*Salman v. Saudi Arabian Cultural Mission*,
    2017 WL 176576 (E.D. Va. 2017) ....................................................... 6, 7-8

*Schuler v. PricewaterhouseCoopers, LLP*,
    514 F.3d 1365 (D.C. Cir. 2008) .............................................................. 13

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005) ................................................................ 19

*\*Sturdza v. United Arab Emirates*,
    281 F.3d 1287 (D.C. Cir. 2002) ......................................................... 10, 17

*\*Transamerica Leasing, Inc. v. La Republica de Venezuela*,
    200 F.3d 843 (D.C. Cir. 2000) .............................................................. 4-6

*Wilson v. DNC Servs. Corp.*,
    417 F. Supp. 3d 86 (D.D.C. 2019) .......................................................... 18

## STATUTES

*28 U.S.C. § 1330 ...................................................................................... 1

28 U.S.C. § 1603 ........................................................................................ 3

28 U.S.C. § 1605 ................................................................................................................ 3

*28 U.S.C. § 1606 ........................................................................................................... 1-2

*42 U.S.C. § 1981 ............................................................................................................. 17

42 U.S.C. § 1985 ............................................................................................................... 17

*42 U.S.C. § 2000e-5 .................................................................................................. 13, 14

*D.C. Code § 2-1401.02 .................................................................................................. 10

# I.  INTRODUCTION

Defendant The Embassy of the Kingdom of Saudi Arabia ("The Embassy") submits this Reply in further support of its Motion to Dismiss Plaintiffs' Second Amended Complaint and to Strike and the supporting Memorandum of Points and Authorities ("Motion to Dismiss") (ECF No. 51).  For the reasons set forth in the Motion to Dismiss, the Court should grant The Embassy's Motion because:

(1)  Plaintiffs have not sufficiently pled facts to establish an exemption to the Foreign Sovereign Immunities Act ("FSIA");

(2)  Plaintiffs have not demonstrated that The Embassy was their joint employer for purposes of the District of Columbia Human Rights Act ("DCHRA") or Title VII;

(3)  The Embassy, as a foreign sovereign, is not subject to the DCHRA;

(4)  Plaintiffs have not alleged any adverse actions occurring or being felt in the District of Columbia as required under the DCHRA;

(5)  Plaintiffs' DCHRA claims were not timely filed;

(6)  Plaintiffs' Title VII claims were not timely filed;

(7)  Plaintiffs Balduman, Javaheri, and Schramm failed to exhaust their administrative remedies with respect to race;

(8)  Section 1981 only applies to nongovernmental actions, not those of a foreign sovereign government; and

(9)  Plaintiffs' own allegations demonstrate that race was *not* the "but-for" cause of their terminations, thus defeating their Section 1981 claims.

# II.  ARGUMENT

## A.  Plaintiffs Have Conceded that Their Demand for a Jury Trial and for Punitive Damages Must be Stricken.

Nowhere in their Opposition to The Embassy's Motion to Dismiss and Motion to Strike ("Opposition") (ECF No. 56) do Plaintiffs address the fact that the FSIA prohibits jury trials and punitive damages awards against foreign sovereigns like The Embassy.  *See* 28 U.S.C. § 1330(a) ("district courts shall have original jurisdiction without regard to amount in controversy of any

1

nonjury civil action against a foreign state") and 28 U.S.C. § 1606 ("the foreign state… shall not be liable for punitive damages"). Because Plaintiffs have failed to respond to The Embassy's Motion to Strike, the Court may consider these matters conceded and must strike Plaintiffs' jury trial and punitive damages demands as to The Embassy. *See* Standing Order for Cases Before Judge Trevor N. McFadden (ECF No. 7) at ¶ 12(B) ("where a party fails to respond to arguments in opposition papers, the Court may treat those specific arguments as conceded") (citing *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009). *See also Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1, 11 (D.D.C. 2019) (McFadden, J.) ("it is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (quoting *Davis v. Transp. Sec. Admin.*, 264 F. Supp. 3d 6, 10 (D.D.C. 2017)).

**B.**     <u>Plaintiffs Failed to Allege an Exception to the FSIA's Sovereign Immunity.</u>

"The FSIA 'establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state.'" *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1182 (D.C. Cir. 2013) (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992)). As Plaintiffs admit, "[t]he FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies." *Bell Helicopter Textron, Inc.*, 734 F.3d at 1183.

Contrary to Plaintiffs' assertion in the Opposition, however, they have not pled facts in any of their three Complaints to support that conclusion that an exception to the FSIA applies. *See* Complaint (ECF No. 1-1), Amended Complaint (ECF No. 15), and Second Amended Complaint ("SAC") (ECF No. 30). Indeed, nowhere in any of these three Complaints is there even a reference

to an exception to the FSIA, much less the specific commercial activity exception.  *See id.*  Because "[a] plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss", the Court should hold that it lacks subject matter jurisdiction over The Embassy.  *Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017), *aff'd*, 715 F. App'x 16 (D.C. Cir. 2018) (quoting *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011)).

Even if the Court concludes that Plaintiffs have pled facts that could generally support an exception to the FSIA, The Embassy disputes the applicability of the commercial activity exception to the specific facts involved in this case.  The commercial activity exception provides:

> A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case . . . (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).  The FSIA further defines a "commercial activity carried on in the United States by a foreign state" as "commercial activity carried on by such state and having substantial contact with the United States."  28 U.S.C. § 1603(e).

In support of this proposition, Plaintiffs assert that the commercial activities exception applies on one of two bases.  First, Plaintiffs assert that the mere hiring of a non-civil servant by a sovereign is, itself, a commercial activity, and they cite to several cases for this proposition.  *See El-Hadad v. United Arab Emirates*, 496 F.3d 658 (D.C. Cir. 2007); *Merlini v. Canada*, 926 F.3d

21 (1st Cir. 2019); *Harmouche v. Consulate Gen. of State of Qatar*, 313 F. Supp. 3d 815 (S.D. Tex. 2018). However, the cases cited by Plaintiffs are inapposite.

Unlike the plaintiffs in the three cases cited in the Opposition who were indisputably employees of the foreign state; here, Plaintiffs unquestionably were employees of KAA, not The Embassy, *see* SAC ¶ 29. It is undisputed that KAA is a wholly separate legal entity incorporated under the laws of the Commonwealth of Virginia. *See* **Exhibit 31** (Virginia State Corporation Printout listing KAA as a Virginia Stock Corporation).[1] Thus, KAA is "presumed to have legal status separate from that of the sovereign." *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 847 (D.C. Cir. 2000). Although "[t]hat presumption can be overcome" "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created" or where recognition of the "entity apart from the state would work fraud or injustice," neither situation is present here. *Id*. at 848.

In order to establish that a foreign state is amenable to suit under the commercial activities exception, "the foreign government must purposely avail itself of the benefits of doing business in the United States through the authorized acts of its agent." *Heroth v. Kingdom of Saudi Arabia*, 565 F. Supp. 2d 59, 66 (D.D.C. 2008), *aff'd*, 331 F. App'x 1 (D.C. Cir. 2009). The level of control by the foreign state over the agent must "amount[] to complete domination", and "[a] sovereign does not create an agency relationship merely by owning a majority of a corporation's stock or by appointing its Board of Directors." *Transamerica Leasing*, 200 F.3d at 848-49.

Indeed, in *Transamerica Leasing*, the D.C. Court of Appeals addressed whether the Republic of Venezuela was immune from the Court's jurisdiction under the FSIA where it owned

---

[1] The Court may take judicial notice of public records of corporate filings. *See Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 23 (D.D.C. 2018) (McFadden, J.).

and operated an international shipping company. When the shipping company failed, the plaintiff (which had leased equipment to the shipping company) pursued an action against the Republic of Venezuela. The D.C. Circuit held that the Republic of Venezuela was immune from the Court's jurisdiction under the FSIA and in that its mere ownership of the shipping company was insufficient to subject it to suit by the plaintiff under the commercial activities exception of FSIA. *Id*. at 846. The Court of Appeals concluded that the Republic of Venezuela was not a principal responsible for the actions of an agent (the shipping company) even though it owned the majority of stock in the shipping company, it retained the right to appoint the shipping company's Board of Directors, Chairman, and President, it set up a trust to infuse capital to cover the losses of the shipping company, and it had appointed the manager who was tasked with "running 'day-to-day' operations" of the shipping company. *Id*. at 851-52.

The facts pled by Plaintiffs can be distilled down to (1) the allegation that an Embassy employee allegedly oversaw KAA's financial operations (SAC ¶ 31) and (2) the allegation that, "*[o]n information and belief*, the Embassy issued directives to Mr. Faisandier that he follow personnel decisions and operational functions at KAA" (SAC ¶ 39) (emphasis added).[2] These fall well short of the "degree [of control] sufficient to render the [Embassy] amenable to suit based upon the actions of the [third party] corporation." *Transamerica Leasing*, 200 F.3d at 850.

Thus, there is no basis for concluding that KAA was an "agent" of The Embassy such that the employees of KAA should also be deemed to have been employed by The Embassy. Although Plaintiffs allege in the SAC that an Embassy employee oversaw KAA's financial operations and

---

[2] The SAC also contains the conclusory allegation, with no factual support whatsoever, that "KAA, directed by the Embassy, terminated a number of non-Saudi Arabian, non-Sunni Muslim employees" (SAC ¶ 70).

that The Embassy provided funds to KAA to keep it operational, as the Court of Appeals has recognized, "provid[ing] funds … in order to reorganize [an] ailing company and to bail it out of debt" do not demonstrate the degree of control necessary for the foreign state "to forfeit its immunity under the FSIA." *Transamerica Leasing*, 200 F.3d at 852. *See also DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 211 (D.D.C. 2014) (holding that "the government's maintenance of some degree of financial oversight" over a third party entity did not "transform[] a juridically separate instrumentality into an organ of the state"). Because the SAC is devoid of facts that establish that The Embassy exercised "complete domination" over KAA, the Court should find that KAA was not an "agent" of The Embassy and, therefore, the mere hiring of Plaintiffs by KAA cannot be construed as The Embassy engaging in commercial activity.

Moreover, even if KAA was deemed to be an agent of The Embassy and the Plaintiffs somehow deemed to be employees of The Embassy, which The Embassy disputes, Plaintiffs were indisputably employed by KAA in Virginia, *see* **Exhibit 32** (Oral Argument Transcript at p. 25, ¶¶ 14-16). Thus, the law of the Fourth Circuit should apply and, courts in that Circuit have repeatedly held that mere employment of an individual by a foreign state does constitute commercial activity so as to strip the foreign state of the FSIA's immunity. *See, e.g.*, *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466-67 (4th Cir. 2000) (affirming that the FSIA barred the plaintiff's discrimination claims against a private third party providing security services to a Saudi Arabian Princess); *Crum v. Kingdom of Saudi Arabia*, 2005 WL 3752271, at *3-4 (E.D. Va. 2005) (commercial activity exception did not save the discrimination claims of a limousine driver formerly employed by Saudi Arabian Embassy); *Salman v. Saudi Arabian Cultural Mission*, 2017 WL 176576, at *4-5 (E.D. Va. 2017) (commercial activity exception not applicable in discrimination case involving academic advisor employed by the Saudi Arabian Cultural Mission).

In summary, Plaintiffs attempt to assert the commercial activities exception on the basis that The Embassy hired the Plaintiffs fails because (i) the SAC does not plead sufficient facts to establish that KAA was an agent of The Embassy such that the employees of KAA should be deemed employees of The Embassy and (ii) the governing law in the Fourth Circuit, where employees were employed, clearly establishes that mere employment is not a commercial activity under the FSIA.

Plaintiffs also summarily allege – without any factual or legal support whatsoever – that "the operation of KAA is a commercial activity ." ECF 56 (Opp. at 15). This allegation also is flawed. First, as shown above, putting aside the issue of whether operating a school is indeed a commercial activity, the facts alleged do not come close to showing that KAA was operated by The Embassy. Second, even if Plaintiffs could somehow allege facts to show that The Embassy operated KAA, the administration of a school by a governmental entity is an inherently governmental function, not a commercial activity. As one court recently noted in a similar context, "the manner in which Saudi Arabia facilitates and guides the education of its youth has political, cultural, and religious dimensions", which make the commercial activity exception inapplicable. *Salman*, 2017 WL 176576 at *5. In *Salman*, the plaintiff was formerly employed with the Saudi Arabian Cultural Mission ("SACM"), an arm of the Saudi Arabian government, as an academic advisor, providing advisory services to Saudi Arabian students studying in the United States. *Id*. at *1. The plaintiff argued that SACM discriminated against him when it terminated his employment and that the commercial activities exception to the FSIA provided him with a jurisdictional basis to sue SACM. *Id*. at *1-2. The court disagreed reasoning that, SACM "did not buy or sell anything", as would be expected with the commercial activities exception. *Id*. at *5. Rather, it simply "effectuate[d] its educational policy, ensuring that students studying abroad

received precisely the same benefits as their domestic counterparts." *Id*. For these reasons, the commercial activity exception is inapplicable.[3]

## C.  <u>The Embassy Was Not Plaintiffs' Joint Employer</u>.

In support of their claim that The Embassy was their joint employer, Plaintiffs cite to *Golden v. Management & Training Corp*., 266 F. Supp. 3d 277 (D.D.C. 2017). However, this case actually supports The Embassy's argument. *See id*. at 287 n.8. In *Golden*, the plaintiff was an employee of Management & Training Corporation ("MTC"), a subcontractor to Chugach Government Services, Inc. ("CGSI"), on a contract being performed for the Department of Labor. *Id*. at 279. In dismissing CGSI as not being the employer of the plaintiff, the court reasoned that, although the plaintiff had "allege[d] that CGSI maintained a human resources director" at his worksite who "oversaw the duties and responsibilities of MTC's hired staff, including [him]", such an allegation fell short of demonstrating joint employment – namely that CGSI "'control[led] and direct[ed]' both the details and results of [the plaintiff's] work or that it controlled the 'terms and conditions' of his employment." *Id*. at 287 n.8 (quoting *Redd v. Summers*, 232 F.3d 933, 938 (D.C. Cir. 2000)).

In the Opposition, Plaintiffs utterly fail to address the fact that their own allegations in the SAC demonstrate that Plaintiffs, themselves, controlled the day-to-day operations of KAA and supervised each other – not any Embassy representative. See SAC ¶¶ 18-25. Instead, Plaintiffs fall back on their allegation that The Embassy provided financial oversight to KAA (SAC ¶ 31),

---

[3] The Court should also hold that the fraud or injustice exception to agency principles under the commercial activities exception is inapplicable because The Embassy has not "intentionally [sought] to gain a benefit while using the legally separate status of [KAA] as a shield to guard against concomitant costs or risks", nor has The Embassy "otherwise unjustly enriche[d] itself through" KAA. *Republic of Honduras*, 71 F. Supp. 3d at 218. Indeed, Plaintiffs have sufficient redress for their alleged harms – a lawsuit against KAA.

and an "on information and belief" allegation that an unnamed Embassy representative "issued directives to [Principal] Faisandier that he follow personnel decisions and operational functions at KAA" (SAC ¶ 39).

However, "the Complaint offers no factual support to support the[se] bald assertion[s]", and as this Court has made clear, "conclusory allegations are insufficient on their own to defeat a motion to dismiss." *Bundy v. Sessions*, 387 F. Supp. 3d 121, 129 (D.D.C. 2019) (McFadden, J.), *aff'd*, 812 F. App'x 1 (D.C. Cir. 2020). Indeed, this Court, during KAA's Motion to Dismiss Plaintiff's First Amended Complaint, pressed Plaintiffs on their threadbare factual allegations suggesting The Embassy's involvement, noting that Plaintiffs were "well positioned within the school to, presumably, be able to know whether the embassy was involved and, if so, how it was involved." **Exhibit 33** (Oral Argument Transcript at p. 27, ¶¶ 7-17). Yet, despite this being Plaintiffs' third bite at the apple, Plaintiffs still have offered no details to support their conclusory allegations, and the Court should hold The Embassy was not Plaintiffs' joint employer. Moreover, as the only case cited by Plaintiffs in their Opposition demonstrates, even if The Embassy provided *some* oversight of KAA (which The Embassy disputes), an "allegation of oversight, standing alone, is not enough to establish" joint employment. *Golden*, 266 F. Supp. 3d at 287 n.8.

D.     **Sovereign Immunity Bars Plaintiffs' D.C. Human Rights Act Claims**.

Plaintiffs contend that sovereign immunity does not bar their claims under the D.C. Human Rights Act ("DCHRA") because the operation of KAA is a "commercial activity" under the FSIA. This argument also is a non-starter. The commercial activities exception to the FSIA only delineates whether a foreign sovereign can be brought into court, not whether the foreign sovereign can be held liable under a particular state or local statute. Indeed, as the Court of Appeals recognized in *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066 (D.C. Cir. 2012): "[t]he

Supreme Court has explained ...'the language and the history of the FSIA clearly establish that the Act was not intended to affect the substantive law determining the liability of a foreign state or instrumentality.'" *Id.* at 1075 (quoting *First Nat'l City Bank v. Banco Para El Comercio*, 462 U.S. 611, 620 (1983)).

Plaintiffs completely fail to address The Embassy's argument that, as a foreign sovereign, The Embassy is not a "Person" who can be held liable for employment discrimination under the DCHRA. Specifically, the DCHRA defines "Person" as:

> any individual, firm, partnership, mutual company, joint-stock company, corporation, association, organization, unincorporated organization, labor union, government agency, incorporated society, statutory or common-law trust, estate, executor, administrator, receiver, trustee, conservator, liquidator, trustee in bankruptcy, committee, assignee, officer, employee, principal or agent, legal or personal representative, real estate broker or salesman or any agent or representative of any of the foregoing.

D.C. Code § 2-1401.02(21). Plaintiffs' failure to address this argument in their Opposition means they have conceded this point. *See Harris v. Bowser*, 404 F. Supp. 3d 190, 201 (D.D.C. 2019) (McFadden, J.) (holding that the plaintiffs' failure to address the defendant's argument that it did not fall within the definition of "insurer" and had not made any "statement" as defined in the District of Columbia's Unfair Insurance Trade Practices statute rendered those points conceded). Thus, because The Embassy is not a "Person" under the DCHRA, Plaintiffs' DCHRA claims must be dismissed. *Cf. Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002) finding that a foreign sovereign could not be not subject to a conspiracy to violate civil rights claim under 42 U.S.C. § 1985 because it is not a "person" under that law).

## E.     Plaintiffs Fail to Allege Any Adverse Acts Occurring or Being Felt in D.C.

The DCHRA also is inapplicable because the SAC puts forth no facts to support a conclusion that an adverse action occurred or was felt in the District of Columbia, as is required under that act. Rather Plaintiffs only rely on the legal conclusion contained in the "Jurisdiction

and Venue" section of the SAC – that venue is proper in the District of Columbia because The Embassy "resides within this judicial district" and KAA "is controlled by the residing Defendant." SAC ¶ 6. Once again, Plaintiffs' argument misses the mark. Simply because a Defendant is located in the District of Columbia does not mean that the Plaintiffs, who worked in Virginia, experienced an adverse action in D.C. Indeed, as noted in the Motion to Dismiss, "[u]nder District of Columbia Court of Appeals precedent," it is "not … enough to establish subject matter jurisdiction under the DCHRA simply [by] show[ing] that the company is headquartered here or has offices here." *Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 151 (D.D.C. 2016) (quoting *Monteilh v. AFSCME*, 982 A.3d 301, 304-05 (D.C. 2009)). Plaintiffs have not alleged a single wrongful act occurring in the District of Columbia, and the Court should dismiss their DCHRA claims on this ground as well.

**F.  Plaintiffs Did Not Timely File Their DCHRA Claims within 1 Year of Discovery of the Alleged Unlawful Acts.**

In the Opposition, Plaintiffs assert their DCHRA claims are timely because they filed their EEOC Charges in May 2018 and such Charges were cross-filed with the D.C. Office of Human Rights ("OHR") at that time. Notwithstanding the fact that Plaintiffs filed separate Charges with the OHR in July 2018, several months after filing their EEOC Charges, Plaintiffs' DCHRA claims remain untimely even using the EEOC Charge date as the operative date (as demonstrated in the chart below) because, after the EEOC issued its right-to-sue notice, the "tolling period for Plaintiff[s'] DCHRA claims ended." *Hammel v. Marsh USA Inc*., 79 F. Supp. 3d 234, 241 (D.D.C. 2015).[4]

---

[4] Although counsel for The Embassy has submitted a Freedom of Information Act request to the OHR for a copy of Plaintiff Howell's OHR documents, including the Intake Questionnaire and

11

| Plaintiff | Time Elapsed Between Date of Discovery of Unlawful Act / Termination and EEOC Charge | Time Elapsed Between EEOC Notice-of-Right-to-Sue and OHR Complaint | Time Elapsed Between OHR Dismissal Date and OHR Appeal Date | Time Elapsed Between Discovery of Unlawful Act / Termination and Initial Complaint with Superior Court (Excluding Tolling Periods) |
|---|---|---|---|---|
| **Adetoro** | 07/27/17 to 05/30/18 = 307 days | 06/06/18 to 07/31/18 = 55 days | 09/10/18 to 09/25/18 = 15 days | 307+55+15 = 377 days |
| **Balduman** | 07/17/17 to 05/14/18 = 301 days | 05/15/18 to 07/16/18 = 62 days | 09/12/18 to 09/25/18 = 13 days | 301 + 62 + 13 = 376 days |
| **Gaujean-La Mar** | 07/17/17 to 05/30/18 = 317 days | 06/06/18 to 07/31/18 = 55 days | 09/10/18 to 09/25/18 = 15 days | 317+55+15 = 387 days |
| **Greer** | 07/31/17 to 05/30/18 = 303 days | 06/06/18 to 07/26/18 = 50 days | 09/10/18 to 09/25/18 = 15 days | 303+50+15 = 368 days |
| **Javaheri** | 07/31/17 to 05/30/18 = 303 days | 06/06/18 to 07/30/18 = 54 days | 09/10/18 to 09/25/18 = 15 days | 303+54+15= 372 days |
| **Schramm** | 07/28/17[5] to 05/30/18 = 306 days | 06/06/18 to 07/27/2018 = 51 days | 09/10/18 to 09/25/18 = 15 days | 306+51+15 = 372 days |
| **Wilkins** | 07/26/17 to 05/30/18 = 308 days | 06/06/18 to 07/27/18 = 51 days | 09/10/18 to 09/25/18 = 15 days | 308+51+15 = 374 days |

dismissal, counsel has yet to receive such documents. The Embassy avers that Plaintiff Howell's claims, like those of her co-Plaintiffs, are untimely.

[5] Dr. Schramm was notified of his termination from KAA during the third week of July 2017. SAC ¶ 7(g).

*See* **Exhibits 1-30** (EEOC Charges and Dismissals and OHR Intake Questionnaires and Dismissals). *See also* SAC ¶¶ 7-12. Because Plaintiffs did not file suit within one year of the discovery of their employment terminations, the Court should dismiss their DCHRA claims.

**G.      Plaintiffs' Title VII Claims Are Time-Barred Because They Did Not File Their Charges Within 300 Days of the Alleged Wrongful Acts.[6]**

In the Opposition, Plaintiffs cite to *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365 (D.C. Cir. 2008) for the proposition that the filing of their Charges with the EEOC resulted in the Charges being automatically cross-filed with the OHR, thereby making Title VII's 300-day filing deadline, not its 180-day deadline, applicable. What Plaintiffs fail to address, however, is that they did not even meet this 300-day deadline. Instead, Plaintiffs engage in a rambling shell game about the history of their Charges with the EEOC and OHR, without confronting the undisputed fact that, with the exception of Plaintiff Howell, their Charges were not filed with either agency within Title VII's 300-day time period.

As reflected in the Motion to Dismiss, excluding Plaintiff Howell, the remaining Plaintiffs filed their EEOC Charges anywhere from 301 to 317 days after being notified of their terminations. *See* Motion to Dismiss (ECF No. 51 at 22-23) and **Exhibits 1**, **5**, **9**, **13**, **19**, **23**, and **27** (EEOC Charges). A plaintiff's failure to file a charge "within 300 days of the adverse action" renders the claims "time-barred". *Omene v. Accenture Fed. Servs.*, 2020 WL 1189298, at *6 (D.D.C. 2020) (McFadden, J.) (citing 42 U.S.C. § 2000e-5(e)(1)). *See also Gulley v. D.C.*, __ F. Supp. 3d __,

---

[6] In the caption of Count III, Plaintiffs assert Title VII claims only as to Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Howell, Javaheri, and Wilkins, not Greer and Schramm. *See* SAC at page 16. However, the allegations in the body of Count III refer to "Plaintiffs" and do not distinguish this limited group. *See* SAC ¶¶ 106-119. For the avoidance of doubt, The Embassy has included arguments as to Plaintiffs Greer and Schramm but does not waive the fact that Plaintiffs Greer and Schramm have abandoned their Title VII claims against The Embassy.

2020 WL 4001471, at *5 (D.D.C. 2020) (McFadden, J.) (same); *Braxton v. First Transit*, 322 F.

Supp. 3d 110, 116 (D.D.C. 2018) (McFadden, J.) (same). Accordingly, the Title VII claims of

Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Greer, Javaheri, Schramm, and Wilkins must be

dismissed with prejudice.

**H.      Plaintiffs' Title VII Claims Are Time-Barred Because They Did Not File Suit Within 90 Days of Receipt of the EEOC's Right-to-Sue Notice.[7]**

Title VII requires that a civil action be brought within 90 days of receiving the EEOC's

right-to-sue notice. *See* 42 U.S.C. § 2000e-5(f)(1). Plaintiffs do not dispute, in their Opposition,

that the EEOC issued their notices of right-to-sue on May 15, 2018 and June 6, 2018 and that they

did not file their lawsuit until December 18, 2018, approximately 200 days later. Instead, they

suggest, without any supporting case law, that they filed a request for reconsideration with the

OHR (not the EEOC) and that this request (with a different agency) somehow stayed the time to

file their Title VII lawsuit. Plaintiffs' argument is meritless.

In *Dougherty v. Barry*, 869 F.2d 605 (D.C. Cir. 1989), the Court of Appeals unequivocally

held that the EEOC's right-to-sue letter starts the running of the 90-day clock with which a plaintiff

must file suit under Title VII, even where the plaintiffs "believed that pending administrative

remedies relating to their OHR complaint precluded suit on the EEOC Charge." *Id.* at 613. *See*

*also Muth v. Cobro Corp.*, 895 F. Supp. 254, 256 (E.D. Mo. 1995) (dismissing plaintiff's Title VII

and ADA claims as untimely and reasoning that "§ 2000e-5(f)(1) explicitly states that the 90 days

---

[7] As noted above, in the caption of Count III, Plaintiffs appear to assert Title VII claims only as to Plaintiffs Adetoro, Balduman, Gaujean-La Mar, Howell, Javaheri, and Wilkins, not Greer and Schramm. *See* SAC at page 16. However, the allegations in the body of Count III refer to "Plaintiffs" and do not distinguish this limited group. *See* SAC ¶¶ 106-119. For the avoidance of doubt, The Embassy has included arguments as to all Plaintiffs, including Plaintiffs Greer and Schramm, but does not waive the fact that Plaintiffs Greer and Schramm have abandoned their Title VII claims against The Embassy.

limitation period runs from receipt of the EEOC 'Right-to-Sue' letter only, not from a letter received by … any applicable state agency").

Even if Plaintiffs' request for reconsideration by the OHR did stay the time in which they were required to file their Title VII lawsuit, which it did not, Plaintiffs' argument fails for the additional reason that they did not file their request for reconsideration with the OHR within 90 days of the EEOC's notice-of-right-to-sue letters. Indeed, Plaintiffs filed their request for reconsideration with the DCOHR on September 25, 2018 – 133 days and 111 days after the EEOC issued their right-to-sue letters on May 15, 2018 and June 6, 2018. *Compare* SAC ¶ 11 with **Exhibits 2**, **6**, **10**, **14**, **18**, **20**, **24**, and **28** (EEOC Dismissals).

Because Plaintiffs did not file their Title VII lawsuit within 90 days of receipt of their EEOC right-to-sue notices, they are "barred from bringing those allegations now", and these claims must be dismissed with prejudice. *Gulley v. D.C.*, __ F. Supp. 3d __, 2000 WL 4001471, at *5 (D.D.C. 2020) (McFadden, J.).

I.    **Plaintiffs' Balduman, Javaheri, and Schramm Failed to Exhaust Their Administrative Remedies as to Race.**[8]

In the Opposition, Plaintiffs Balduman, Javaheri, and Schramm do not deny that they failed to check the "race" box – or otherwise assert claims of race discrimination – on the Charges they filed with the EEOC in May 2018. *See* **Exhibit 5** (Balduman EEOC Charge); **Exhibit 19** (Javaheri EEOC Charge); and **Exhibit 23** (Schramm EEOC Charge). Instead, these Plaintiffs cite to *Osuoha*

---

[8] As noted above, Plaintiff Schramm does not appear to assert any Title VII claims in the caption of Count III. *See* SAC at page 16. However, the allegations in the body of Count III refer to "Plaintiffs" and do not appear to exclude Plaintiff Schramm. *See* SAC ¶¶ 106-119. For the avoidance of doubt, The Embassy has included an argument as to Plaintiff Schramm's failure to exhaust administrative remedies, but it does not waive the fact that Plaintiff Schramm has abandoned his Title VII claims against The Embassy.

*v. District of Columbia Govt.*, 2003 WL 21466905 (D.C. Cir. 2003), which holds that, in accordance with the worksharing agreement between the EEOC and the OHR, filing a Charge with one agency results in the Charge being dual-filed with the other agency.

The Embassy does not dispute the existence of a worksharing agreement between the EEOC and the OHR and the dual-filing that may result from such an agreement. However, nowhere in their Opposition do Plaintiffs address the fact that their failure to allege *race* discrimination in the Charge itself dooms their ability to bring a race discrimination lawsuit. As this Court has held, "[t]he claim brought in federal court must be 'limited in scope to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations' and a "liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process' is prohibited." *Rogers v. Smithsonian Instit.*, 305 F. Supp. 3d 89, 95 (D.D.C. 2018) (McFadden, J.) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). Plaintiffs' failure to check the race box in their Charges and to address this deficiency in their Opposition dooms their race discrimination claims. *See id. See also Omene*, 2020 WL 1189298, at *4 (dismissing the plaintiff's ADA claim on the ground that she failed to address, in her opposition, the defendant's argument that her claim did not encompass disability discrimination, which rendered it conceded).

To the extent Plaintiffs Balduman, Javaheri, and Schramm are attempting to circumvent their failure to check the race box on their EEOC Charge by alleging they did so in their subsequent OHR Charges, this argument lacks merit. Indeed, these Plaintiffs did not check any box reflecting the basis of their complaint with the OHR. *See* **Exhibit 7** (Balduman OHR Intake); **Exhibit 21** (Javaheri OHR Intake); and **Exhibit 25** (Schramm OHR Intake). Moreover, these subsequent OHR Charges were filed well outside of Title VII's 300-day filing deadline.

**J.**     **Section 1981 of the Civil Rights Act of 1866 Does Not Apply to Foreign**
          **Sovereign Governments.**

Plaintiffs fail to substantively address The Embassy's argument that, as a government entity, The Embassy cannot be held liable under Section 1981 of the Civil Rights Act of 1866 (the "Act" or "Section 1981") because the Act only protects "against impairment by nongovernmental discrimination", *see* 42 U.S.C. § 1981(c).  As discussed in The Embassy's Motion to Dismiss, courts have consistently held that Section 1981 claims do not apply to the U.S. government and its agencies.  *See*, *e.g.*, *Brown v. U.S.*, 2004 WL 344411, at *1 (D.C. Cir. 2004) (recognizing the longstanding precedent that sovereign immunity bars Section 1981 claims against the federal government).  In the face of this well-established precedent, Plaintiffs provide no legal authority for the premise that Section 1981, while not applying to the U.S. Government, should nonetheless be applied to foreign governments.  Rather, Plaintiffs point only to their earlier argument that the FSIA's commercial activity exception applies.  However as discussed above, the commercial activity exception to the FSIA only addresses whether a foreign state can be hauled into U.S. court, not whether the foreign state can be held liable under the particular statute.  *See*, *e.g.*, *McKesson Corp.*, 672 F.3d at 1075.

Further, the D.C. Circuit has held that sovereign immunity bars a foreign government from being liable under a companion civil rights statute, 42 U.S.C. § 1985.  *See Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002).  Under this rationale, and as argued by The Embassy in its Motion to Dismiss, because The Embassy is a foreign sovereign, it is immune from liability under Section 1981.  Plaintiffs wholly fail to address these arguments in their Opposition, and such failure renders these points conceded.

17

**K.**     **Plaintiffs Fail to Allege that Race Was "But-For" Causes of Their Termination.**

In the Opposition, Plaintiffs argue that they have properly alleged that race – not their non-Saudi Arabian national origin and their non-Sunni Muslim religion – was the "but-for" cause of their termination.  In support of this argument, Plaintiffs cite to a conversation their counsel had with the Court during the hearing on KAA's Motion to Dismiss Plaintiffs' First Amended Complaint.  However, Plaintiffs wholly fail to address The Embassy's argument that the SAC – the operative pleading – reflects otherwise.  Indeed, as The Embassy highlights in its Motion to Dismiss, the SAC is riddled with factual allegations claiming differential treatment *not* on the basis of race, but, rather, on the basis of an individual's non-Saudi Arabian national origin and non-Muslim religion.  *See* SAC ¶¶ 20, 25, 42, 45, 46, 49, 60, 62, 68, 69, 70, and 72.  The SAC's header, Opposition at 10, underscores this point: "Defendants Discriminated Against Employees who were *not Sunni Muslims*, and who were *not of Saudi Arabian* Descent".  SAC (ECF No. 30) at page 10 (emphasis added).  Despite Plaintiffs' attempts to now suggest, in  their Opposition, that race was the but-for cause of their terminations, "Plaintiffs may not amend their Complaint through their Opposition", and their failure to properly plead race as the but-for cause of their terminations dooms their Section 1981 claims.  *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 97 (D.D.C. 2019) (McFadden, J.).

The factual allegations pled by Plaintiffs in the SAC are substantially similar to those pled by the plaintiff in *Ndondij v. InterPark Inc.*, 768 F. Supp. 2d 263 (D.D.C. 2011), where the court dismissed the plaintiff's Section 1981 claims because they were based on his national origin, not race.  For example, like the plaintiff in *Ndondji*, who alleged that he was "replaced by a 'non-Angolan individual'", which the court took to mean that he was referring to his national origin, not race, Plaintiffs Balduman, Greer, and Wilkins contend that they were replaced by Saudi

Arabian Muslim individuals. *Ndondji*, 768 F. Supp. 2d at 273. *See also* SAC ¶¶ 19 and 25. Moreover, the essence of Plaintiffs' claims has been and continues to be that the Plaintiffs, who are all of varying races, were terminated because they "were not Saudi Arabian Muslims". SAC ¶ 69. Thus, the Court should not "recognize [Plaintiffs'] attempt to blur race and national origin [and religion] in order to make out a section 1981 claim" and should dismiss Plaintiffs' Section 1981 claims. *Ndondji*, 768 F. Supp. 2d at 273.

**L.      Plaintiffs Fail to Address the Fact that the SAC Itself Demonstrates that KAA's Finances and Their Own Poor Performance Were Causes of Their Terminations.**

In the Opposition, Plaintiffs do not address The Embassy's argument that their factual allegations demonstrate that factors other than race – including KAA's finances (*see* SAC ¶ 71) and their own poor performance (*see* SAC ¶ 43) – were causes of their terminations and that, therefore, race was not the but-for cause of their terminations as required by *Comcast Corp. v. National Association of African American-Owned Media*, __ U.S. __, 140 S. Ct. 1009 (2020) . Thus, Plaintiffs have "once again conceded [these] claims by failing to address [The Embassy's] arguments for dismissing them." *Omene*, 2020 WL 1189298, at *4. Indeed, as this Court has recognized, "'[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.... [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'" *Id.* (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).

Moreover, post-*Comcast Corp.*, where a plaintiff has averred that factors *in addition to* race caused the termination of the plaintiff's employment, such averments are "self-defeating in light of the Supreme Court's recent decision establishing 'but-for' causation as a necessary element of § 1981 suits." *Rubert v. King*, 2020 WL 5751513, at *7 (S.D.N.Y. 2020). Accordingly, because

the SAC demonstrates that Plaintiffs' terminations resulted from KAA's financial constraints and Plaintiffs' poor performance, *see* SAC ¶¶ 43 and 71, Plaintiffs' Section 1981 should be dismissed because but-for causation is lacking.

### III. <u>CONCLUSION</u>

For the foregoing reasons and those set forth in The Embassy's Motion to Dismiss, the Court should dismiss Plaintiffs' SAC in its entirety and with prejudice as to The Embassy. In the event the Court does not dismiss all of Plaintiffs' claims against The Embassy, it should strike Plaintiffs' demand for a jury trial and punitive damages as to The Embassy because these are not permitted under the FSIA and because Plaintiffs have conceded these arguments by failing to respond.

Dated: October 1, 2020

Respectfully submitted,

_____/s/ Lori H. Turner_____
Edward Lee Isler, DC Bar No. 417076
Lori H. Turner, DC Bar No. 495530
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com

*Counsel for Defendant*
*The Embassy of the Kingdom of Saudi Arabia*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

Phillis H. Rambsy, Esq.
Rambsy Law PC
315 Deaderick St., Suite 1550
Nashville, TN 37238
phillis@rambsylaw.com

Francisco Mundaca, Esq.
The Spiggle Law Firm, PC
4830 31st Street, South, Suite A
Arlington, VA 22206
fmundaca@spigglelaw.com
*Counsel for Plaintiffs*

Haig V. Kalbian, Esq.
Stephen C. Leckar, Esq.
Evan M. Lisull, Esq.
Kalbian Hagerty LLP
888 17th Street NW, Suite 1000
Washington, DC 20006
hkalbian@kalbianhagerty.com
sleckar@kalbianhagerty.com
elisull@kalbianhagerty.com
*Counsel for Defendant King Abdullah Academy*

       /s/ Lori H. Turner