**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TOSIN ADETORO**, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:19-cv-01918 (TNM) |
| **KING ABDULLAH ACADEMY**, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiffs have twice alleged discrimination-based claims against Defendants King

Abdullah Academy (the "Academy") and the Embassy of the Kingdom of Saudi Arabia.  In their

latest effort, Plaintiffs assert a claim of race discrimination under 42 U.S.C. § 1981.  But the third

time is not always the charm.  Plaintiffs ignore the Embassy's argument that it is not subject to

Section 1981 and therefore concede the point.  And Plaintiffs have not shown that any purported

race discrimination was the "but for" cause of their termination, which is fatal to their claim.  As

explained below, the Court will therefore grant Defendants' motions to dismiss.

**I.**

Plaintiffs are eight former employees of the Academy ("Former Employees"), a "Saudi

Arabian funded international school."  Second Am. Compl. ("Compl.") ¶¶ 7, 18–26, ECF No.

30.  These Former Employees represent a mix of races, religions, and national origins.  *Id.*

¶¶ 18–25.  Plaintiff Tosin Adetoro, for example, "is an African American, Muslim woman born

in Nigeria."  *Id.* ¶ 18.  Plaintiff Sepideh Javaheri is "an Iranian, Shia Muslim woman, who was

raised in Iran."  *Id.* ¶ 23.  None of the Former Employees is from Saudi Arabia.

The Former Employees claim that their employment at the Academy changed for the worse in the 2016-17 academic year.  It started when the Academy "began to give preference in hiring Saudi Arabian, Sunni Muslim candidates."  *Id.* ¶ 45.  It continued throughout the year, as the Academy "gave Arabic Middle Eastern, Sunni Muslim candidates more favorable treatment than those employees who were not Sunni Muslims of Arabic Middle Eastern descent."  *Id.* ¶ 67; *see id.* ¶¶ 46–48, 54–59.  And it culminated when the Academy, "directed by the Embassy, terminated a number of non-Saudi Arabian, non-Sunni Muslim employees" at the end of the year.  *Id.* ¶ 70.  All the Former Employees were terminated from the Academy.  *Id.* ¶ 30.

According to the Former Employees, "employees selected for termination were disproportionately non-Sunni Muslims who were not of Arabic Middle Eastern descent."  *Id.* ¶ 73.  Those employees "who were not Saudi Arabian Muslims, including African-American employees," were terminated.  *Id.* ¶ 69.  But Saudi Arabian Muslims recommended for termination were retained.  *Id.* ¶ 68.

This Complaint is the Former Employees' third attempt to raise a discrimination-based claim against the Academy and the Embassy (collectively, "Defendants").

The Former Employees first sued Defendants in the Superior Court for the District of Columbia, alleging discrimination based on race, national origin, and/or religion in violation of the D.C. Human Rights Act.  *See* Notice of Removal of Civil Action Ex. 1, ECF No. 1-1.  After the Embassy removed the action to this Court, the Former Employees amended their complaint to add discrimination claims under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e *et seq*. *See* Am. Compl. ¶¶ 75–99, ECF No. 15.  The Academy then moved to dismiss the amended

complaint.[1]  *See* Def. King Abdullah Academy's Mot. to Dismiss, ECF No. 17.  The Court held

a hearing on the Academy's motion.  *See* Min. Entry (Oct. 16, 2019).

At the hearing, the Court noted that the Academy had "raised some fair points" about the

lack of detail in the amended complaint, especially as to the Section 1981 claim.  *See* Hr'g Tr. at

38:8–15, ECF No. 29.[2]  After discussing the shortcomings of the amended complaint, the Court

afforded the Former Employees another chance to amend it.  *Id.* at 39:24–25.  In doing so,

however, the Court cautioned the Former Employees that "we're not going to keep going

through this."  *Id.* at 40:1–2.  It instructed the Former Employees to "think through what details

[they] have, what [they] can put in" their revised complaint.  *Id.* at 39:14–15.

The Former Employees then filed a Second Amended Complaint.  In this latest attempt,

they raise the same three causes of action under the D.C. Human Rights Act (Count I), Section

1981 (Count II), and Title VII (Count III), claiming discrimination based on national origin,

religion, and/or race.  Compl. ¶¶ 78–119.  Both Defendants separately move to dismiss the

Second Amended Complaint.  *See* Mot. to Dismiss Pls.' Second Am. Compl. & Strike by Def.

Embassy of Kingdom of Saudi Arabia ("Embassy Mot."), ECF No. 51; Def. King Abdullah

Academy's Mot. to Dismiss ("Academy Mot."), ECF No. 52.  These motions are now ripe for

disposition.[3]

---

[1]  The Embassy did not respond to the amended complaint because the Former Employees had
not effected service yet.  *See* Mem. & Order, ECF No. 18 (allowing leave to effect proper service
pursuant to 28 U.S.C. § 1608(a)(3) and Federal Rule of Civil Procedure 4(j)).

[2]  All page citations refer to the pagination generated by the Court's CM/ECF system.

[3]  The Court has subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331.

While the motions were pending, the parties agreed to dismiss with prejudice Counts I and III. *See* Joint Stipulation of Partial Dismissal with Prejudice, ECF No. 59. So the only remaining claim is Count II, alleging race discrimination under Section 1981.[4]

The Former Employees claim that "Defendants made employment-based decisions based on [the Former Employees'] race, i.e., not Arabic/Arabian," and that employees "who were Arabic Middle Eastern" received preferential treatment at the Academy. Compl. ¶¶ 97–98.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545–46.

When evaluating a motion to dismiss, the Court does not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. But the Court construes the complaint in the light most favorable to the plaintiff and accepts as true all reasonable inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). The Court's consideration is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters

---

[4] The parties requested an oral hearing on the motions to dismiss. No hearing is necessary. *See* LCvR 7(f). The Court already heard argument and considered briefing on the Academy's previous motion to dismiss, which raised similar challenges to those addressed here.

of which [the court] may take judicial notice." *Hurd v. D.C. Gov't*, 864 F.3d 671, 678 (D.C. Cir.

2017).

### III.

To survive Rule 12(b)(6) scrutiny, the Former Employees must establish that they have

made out a claim of race discrimination under 42 U.S.C. § 1981.  This they fail to do.  They

implicitly concede the Embassy's argument that it is not subject to Section 1981.  In any event,

the Former Employees do not show that any purported race discrimination was the "but for"

cause of their termination from the Academy.  So the Court will grant Defendants' motions to

dismiss for failure to state a claim.[5]  And it will dismiss the Second Amended Complaint with

prejudice.

### A.

The Embassy moves to dismiss Count II, arguing that it is not subject to 42 U.S.C.

§ 1981.[6]  Embassy Mot. at 36–37.  It points to the plain language of Section 1981, which protects

"[a]ll persons within the jurisdiction of the United States" from "impairment by

*nongovernmental* discrimination and impairment under color of *State* law."  42 U.S.C. § 1981(a),

---

[5]  The Embassy also raises a Rule 12(b)(1) argument for lack of subject matter jurisdiction under
the Foreign Sovereign Immunities Act ("FSIA").  *See* Embassy Mot. at 18–19.  The Court,
however, need not reach this issue because it can dismiss the Second Amended Complaint
without deciding the Embassy's FSIA challenges.  *See Chalabi v. Hashemite Kingdom of
Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008) (allowing district court to reach timeliness of
plaintiff's complaint without resolving statutory jurisdiction under the FSIA); *Lin v. United
States*, 690 F. App'x 7, 9 (D.C. Cir. 2017) (per curiam) (citing *Chalabi* and affirming district
court dismissal of claim as untimely without resolving question of jurisdiction under the FSIA).

[6]  The Embassy also moves to strike the Former Employees' request for a jury trial and punitive
damages.  Embassy Mot. at 19.  The Former Employees fail to respond to these requests.  So the
argument is conceded in favor of the Embassy.  *See Hopkins v. Women's Div., Gen. Bd. of Glob.
Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).

(c) (emphasis added).  According to the Embassy, it is thus exempt from the reach of Section 1981 because it is neither "nongovernmental" nor a "State."  Embassy Mot. at 36.

To support its argument, the Embassy cites to decisions exempting the federal government from Section 1981 and another decision that found a related provision, Section 1985, does not apply to foreign governments either.  *Id.* at 37.

The Embassy's challenge raises novel and potentially meritorious issues.  But the Court need not grapple with them today because the Former Employees fail to do so.  *See* Reply Br. of Def. Embassy of Kingdom of Saudi Arabia ("Embassy Reply") at 23, ECF No. 58.

Instead, they contend that sovereign immunity does not bar their Section 1981 claim because "the operation of [the Academy] is a commercial activity"—an exception to the FSIA— and Defendants "were joint employers."  Pls.' Opp'n to Def. Embassy of Kingdom of Saudi Arabia's Mot. to Dismiss & Strike at 32, ECF No. 56.

But the Former Employees miss the point.  They conflate two distinct legal issues.  *See* Embassy Reply at 23.  Sovereign immunity under the FSIA, and the corresponding commercial activity exception, address *if* a foreign entity can be sued in the United States.  *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1605 (2020) ("As a baseline rule, the FSIA holds foreign states and their instrumentalities immune from *the jurisdiction of federal and state courts*." (emphasis added)).  But even if the FSIA's commercial activity exception provides jurisdiction, a court still must decide *what* the sovereign entity can be sued for.  *See McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012) ("Having established that this Court has jurisdiction over [the plaintiff's] claim [through the commercial activity exception], we must now decide which body of law, if any, provides [the plaintiff] with a private right of action against [the foreign defendant].").

Since the Former Employees fail to address how Section 1981 applies to foreign governments notwithstanding jurisdiction under the FSIA, they have conceded the argument to the Embassy. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."); *Davis v. Pension Ben. Guar. Corp.*, 734 F.3d 1161, 1166–67 (D.C. Cir. 2013) ("In this circuit, [i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (cleaned up)).

The Court thus will dismiss the Second Amended Complaint as to the Embassy.

## B.

The Academy urges the Court to dismiss the Second Amended Complaint for another reason.  It argues that the Former Employees fail to show that any purported race discrimination was the "but for" cause of their termination.  *See* Academy Mot. at 51–52.  The Academy is correct.[7]

The Former Employees "readily admit that section 1981 claims can only be brought because of racial discrimination."  Pls.' Opp'n to Def. Kingdom Abdullah Academy's Mot. to Dismiss ("Pls.' Academy Opp'n") at 25, ECF No. 55.  Section 1981's protections, however, extend to "intentional discrimination solely because of [an individual's] ancestry or ethnic characteristics."  *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  So discrimination "based on the fact that [someone] was born an Arab" is actionable, but discrimination based "on the place or nation of [a person's] origin, or [a person's] religion" is not.  *Id.* at 613; *see also*

---

[7] The analysis here provides an alternative rationale for dismissal of the Second Amended Complaint as to the Embassy, which raises the same challenge.  *See* Embassy Mot. at 37–42.

*Kornyo v. Gonzaga Coll. High Sch.*, 308 F. Supp. 3d 212, 216 (D.D.C. 2018) ("[C]ourts in this District have repeatedly dismissed (or summarily adjudicated in defendant's favor) claims under Section 1981 premised solely on national origin discrimination." (citing cases)).

The Former Employees base their Section 1981 claim on the theory that Defendants discriminated against them for not being of "Arabic Middle Eastern descent." They offer a few allegations in the Second Amended Complaint to support this theory. *See, e.g.*, Compl. ¶ 97 ("Defendants made employment-based decisions based on [the Former Employees'] race, i.e., not Arabic/Arabian."); *id.* ¶ 99 ("Defendants intentionally deprived [the Former Employees] of the same terms and conditions of employment available to [Academy] employees who were Arabic Middle Eastern.").

Query whether these allegations plausibly state a claim of race discrimination under Section 1981. "Arabic" and "Middle Eastern" do suggest "ancestry or ethnic characteristics, rather than just country of origin." *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 48 (D.D.C. 2020) (cleaned up). Even so, these allegations "are more conclusions and void of any facts." *Kungle v. State Farm, Fire & Cas. Co.*, 48 F. Supp. 3d 67, 77 (D.D.C. 2014). An "occasional reference" to ancestry or ethnic characteristics may not be enough to survive scrutiny at the pleading stage. *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 274 (D.D.C. 2011); *see also* Academy Mot. at 48–51.

In any event, the Former Employees do not meet the causation standard required under *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020). There, a minority-owned network sued Comcast after it declined to carry the network's channels. *Id.* at 1013. Comcast cited lack of demand for the network's programming, bandwidth constraints, and its preference for news and sports programming, which the network did not

offer.  *Id.*  The network alleged race discrimination under Section 1981.  A district court dismissed the complaint for not "plausibly showing that, but for racial animus, Comcast would have contracted with [the network]."  *Id.*  The Ninth Circuit reversed, finding a "plaintiff must only plead facts plausibly showing that race played 'some role' in the defendant's decision-making process."  *Id.*  But the Supreme Court agreed with the district court.  After surveying Section 1981's text and history and its own precedent, the Court held that "a plaintiff must initially plead and ultimately prove that, *but for race*, it would not have suffered the loss of a legally protected right."  *Id.* at 1019 (emphasis added).  And it held that Section 1981 plaintiffs bear the burden of showing causation from the outset of the case.  *Id.* at 1014–15.

*Comcast* thus demands more from the Former Employees.  They must show that—but for not being of "Arabic Middle Eastern descent"—they would have remained employed at the Academy.  But their own allegations, accepted as true, sink this theory.

The Former Employees offer a buffet of reasons *other than race* that plausibly caused, or contributed to, their termination from the Academy.  The most prominent are national origin and religion.

The Former Employees portray the Academy as a "Saudi Arabian funded international school with the stated mission . . . [to] maintain[] the values of Islam and proficiency with the Arabic language."  Compl. ¶ 26 (cleaned up).  That is why the Academy purportedly preferred Saudi Arabian, Sunni Muslim employees.  *See, e.g.*, *id.* ¶ 45 ("Before the start of the 2016-2017 academic year, [the Academy] began to give preference in hiring Saudi Arabian, Sunni Muslim candidates.").  And why the Academy retained "Saudi Arabian Muslims" recommended for termination, *id.* ¶ 68, but fired those who were not, including Plaintiffs, *id.* ¶ 69; *see id.* ¶ 74

("Employees selected for termination also included Muslims who did not wear religious garments and who were non-Sunni Muslims.").

Several times in the Second Amended Complaint, the Former Employees also suggest that their terminations reflected a *combination* of national origin, religion, and/or race discrimination. *See, e.g.*, *id.* ¶ 65 ("Because of their race, ethnicity, and religion, Arabic Middle Eastern, Sunni Muslim candidates were hired instead of more qualified candidates who were not Arabic Middle Eastern, Sunni Muslims."); *id.* ¶ 73 ("The employees selected for termination were disproportionately non-Sunni Muslims who were not of Arabic Middle Eastern descent.").

Two Former Employees help show the difficulty with causation here.  Adetoro is alleged to be an "African American, Muslim woman born in Nigeria."[8]  *Id.* ¶ 18.  So she could have been terminated for not being from Saudi Arabia, not being of "Arabic Middle Eastern descent," or both.  Javaheri is "an Iranian, Shia Muslim woman, who was raised in Iran."[9]  *Id.* ¶ 23.  So she could have been terminated for not being from Saudi Arabia, not being a Sunni Muslim, or both.

The Former Employees' race discrimination theory faces another problem.  The Former Employees allege other, nondiscriminatory explanations for their termination.  The Academy's president and Diane Wilkins—a Plaintiff here—"developed a list of [Academy] employees recommended for termination *because of low performance scores*."  *Id.* ¶ 43 (emphasis added); *see id.* ¶ 69.  The Former Employees also suggest that the "terminations were purportedly in response to financial issues which had arisen" at the Academy.  *Id.* ¶ 71.  So either low performance or financial issues (or both) could have caused, or at least contributed to, the

---

[8]  The Former Employees do not specify whether Adetoro is a Sunni Muslim.

[9]  The Former Employees do not specify whether Javaheri is of "Arabic Middle Eastern descent."

Former Employees' termination as well.  Of course, neither justification is actionable under Section 1981.

The Former Employees offer only a cursory response to the Academy's challenge; indeed, they fail to grapple with *Comcast* at all.[10]  They reiterate that they seek to pursue a Section 1981 claim based on race, not national origin, discrimination.  Pls.' Academy Opp'n at 26.  And that the Second Amended Complaint "includes additional factual details as to [their] 1981 claim."  *Id.*

But the Court cannot simply ignore allegations.  Throughout the Second Amended Complaint, the Former Employees offer multiple, non-racial explanations for why they may have been terminated from the Academy.  That they also sprinkled in a few allegations of race discrimination is not enough.  *Accord Ndondji*, 768 F. Supp. 2d at 274 ("Such general, conclusory allegations that [the plaintiff] was a victim of racial discrimination are simply not enough to bring a section 1981 action, particularly when the clear thrust of his allegations is based on national origin discrimination.").

In sum, it is impossible for the Court to find that race was the "but for" cause of the Former Employees' termination.  Accepting the Former Employees' own allegations as true, it is equally plausible that they were terminated for not being Sunni Muslim, not being from Saudi Arabia, or both.  Or because of their job performance or the Academy's financial issues.  Or some combination of *all* these reasons.

---

[10]  The Court declines to treat the Academy's argument as conceded because the Former Employees failed to mention *Comcast* in their opposition brief.  *See* Def. King Abdullah Academy's Reply to Pls.' Opp'n to Mot. to Dismiss at 30, ECF No. 57.  Although the Former Employees do not discuss that decision, they argue that their claim stems from race, not national origin, discrimination, which speaks to the "but for" causation standard.

The Former Employees thus cannot state a claim against the Academy for racial discrimination under Section 1981.

## C.

Finally, each Defendant asks the Court to dismiss this action with prejudice. *See* Academy Mot. at 52–53; Embassy Mot. at 43. That is appropriate here.

"A dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (cleaned up).

The Former Employees now had three chances to state a discrimination-based claim against the Academy and the Embassy. At the hearing on the Academy's first motion to dismiss, the Court cautioned the Former Employees that "we're not going to keep going through this." Hr'g Tr. 40:1–2. It instructed the Former Employees to "think through what details [they] have, what [they] can put in" a revised complaint. *Id.* at 39:14–15. The Former Employees also had the benefit of addressing the challenges the Academy raised in its first motion to dismiss.

But they still fell short. A year and three tries later, the Former Employees offer no indication that another complaint will improve their chances to state a plausible claim of discrimination against the Academy or the Embassy. *See Omene v. Accenture Fed. Servs.*, No. 1:18-cv-02414, 2020 WL 1189298, at *10 (D.D.C. Mar. 12, 2020) (dismissing complaint with prejudice where "[plaintiff] has known [defendant's] arguments from the beginning, yet she has been unable to adapt her factual allegations after more than a year of litigation.").

The Former Employees do not appear to disagree. Their opposition briefs fail to address Defendants' requests to dismiss with prejudice so the Court treats the requests as conceded. *See*

*Wannall*, 775 F.3d at 428 ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

While not always appropriate, baseball rules apply here.  The Former Employees failed to show in three swings that they can state a discrimination claim against these Defendants.  More, they make no effort to amend their complaint again.  So the Court will dismiss their action with prejudice.

## IV.

For the reasons above, the Court will grant Defendants' motions and will dismiss Plaintiffs' Second Amended Complaint with prejudice.  A separate Order will issue.

Dated: December 4, 2020

_____
TREVOR N. McFADDEN, U.S.D.J.

13